UNITED STATES of America, Plaintiff-Appellee,

v.

Charles E. McDEVITT, Defendant-Appellant.

No. 15341.

United States Court of Appeals Sixth Circuit.

March 2, 1964.

James W. Cowell, Toledo, Ohio, and Earl T. Prosser, Detroit, Mich., for appellant.

John G. Mattimoe, Asst. U. S. Atty., Toledo, Ohio, Merle M. McCurdy, U. S. Atty., Toledo, Ohio, on brief for appellee.

Before PHILLIPS, Circuit Judge, and WEINMAN and KAESS, District Judges.

PHILLIPS, Circuit Judge.

Appellant, a branch manager for the National Bank of Toledo, Ohio, was indicted for embezzlement in violation of 18 U.S.C. § 656. He was tried before a jury, convicted, and sentenced to imprisonment for a period of one year.

After a number of shortages had occurred at the branch bank, while appellant was serving as manager, bank officials called in one George Kerwin, a "private consultant in theft repression and investigation of thefts," and employed him to conduct an investigation. Appellant was the first person interviewed by Kerwin and was informed that polygraph or lie detector tests would be given to the employees. Appellant testified on direct examination that he volunteered to submit to such a test. Following the test Kerwin, the operator, informed appellant that the results of the test indicated deception. Bank officials were notified to the same effect. Two bank officials thereupon came to the office where the polygraph test had been given and asked appellant certain questions which he answered in detail, admitting that he had converted certain bank funds to his own use. He then signed a statement to that effect.[1]

---

[1] The statement is in the form of questions and answers which were transcribed by a public stenographer, signed by appellant and witnessed by the two bank officers who were present. The statement in part is as follows:

"Q. Of course you are aware of the fact that the bank which you are the head of has encountered numerous shortages which have evidently been caused by the conversion of funds from the bank funds to your own funds. Is this true?

"A. Yes.

"Q. Do you wish to make a statement as to the amounts and the dates they were taken as closely as you can?

"A. Yes. The first one was in June, 1959. That was $50. September of 1959 was $200. December of 1959 was $250. October of 1961 was $750.

"Q. Is this all that you have taken from the bank without permission?

"A. That's right. Nothing was prior to going out to Point Place.

"Q. Will you please relate how you obtained this money? Through what source?

"A. This money was taken after banking hours when helping the tellers to prove the day's work.

"Q. Could you please tell which of the tellers suffered the losses in these particular cases?

"A. October, 1961, that was Betty's.

"Q. Who?

"A. Betty Gertz. All the others was Eddie Walasinski; June, 1959, $50; September, 1959, $200; December of 1959, $250.

"Q. The amounts at the bank chargeable to Betty Gertz were $1,000 in February of 1962; $750 in October, 1961; $100 in June of 1960; $50 in July of 1960; $100 in November of 1960. Do you recollect these amounts? Did you have anything to do with conversion of these amounts to your own use?

"A. Only the $750 in October of 1961.

"Q. Are these amounts that you have stated all the money that was converted to your own use?

"A. Yes.

"Q. Is this statement made of your own free will and accord?

"A. It is.

"Q. Without promises?

"A. It is."

It is not disputed that the confession was made and signed after the polygraph test had been completed. Nor is there any question as to the voluntariness of the confession; appellant testified unequivocally that he signed it voluntarily.[2]

Appellant pleaded not guilty. When asked why then had he signed a statement confessing to embezzlement, he said: "Because, as branch manager, our training as branch manager is that the branch manager has the responsibility of anything that goes on at the branch, losses. * * *"

The Government had expected to call Kerwin, operator of the polygraph machine, as a witness to testify as to certain admissions made to him by appellant. In a hearing out of the presence of the jury the Court ruled that these statements were not admissible, and the Government agreed not to call Kerwin as a witness. The Court admonished counsel for both sides, out of the presence of the jury: "There shall be no evidence of his having been submitted to a lie-detector test. I don't think either counsel has a right to bring it out. * * * There should be no reference, so far as the Government is concerned, to any use of a polygraph machine or the results of a polygraph machine test." Nevertheless appellant thereafter called Kerwin as his own witness.

■ Appellant contends that his confession was the result of the polygraph test and therefore was inadmissible. These machines record lines and variations on a tape for interpretation by the operator. These lines and variations, or more specifically the interpretation of them, constitute the results of a lie detector test; and such results consistently have been held to be inadmissible in evidence. Frye v. United States, 54 App.

D.C. 46, 293 F. 1013, 34 A.L.R. 145; Marks v. United States, 260 F.2d 377 (C.A.10); United States ex rel. Sadowy v. Fay, 189 F.Supp. 151 (S.D.N.Y.). The present appeal, however, does not involve a case where the operator attempted to testify, as an expert, as to what was indicated by the polygraph test. Though the reported cases are few, it seems to be well established that the use of a lie detector in the process of interrogation does not render a subsequent confession involuntary or inadmissible. Tyler v. United States, 90 U.S.App.D.C. 2, 193 F.2d 24, cert. denied. 343 U.S. 908, 72 S.Ct. 639, 96 L.Ed. 1326; Commonwealth v. Jones, 341 Pa. 541, 19 A. 2d 389; Commonwealth v. Hipple, 333 Pa. 33, 3 A.2d 353; Webb v. State, 163 Tex.Cr.R. 392, 291 S.W.2d 331. See Wigmore, Evidence § 999 (3d ed. 1940).

The District Court therefore was correct in holding that the voluntary confession signed by appellant was not rendered inadmissible by the fact that this confession was made following the polygraph test.

■ Appellant next contends that there was not sufficient evidence to corroborate the confession. As set forth in the first footnote to this opinion, appellant confessed the details as to each conversion, setting forth the name of each teller from whose cage money was embezzled. Each of these tellers testified as witnesses, and the amounts of the shortages are supported by their testimony and their daily balance sheets for the dates in question. This evidence sufficiently corroborates the confession. We find that this evidence, together with the confession, supports the verdict of the jury.

The judgment of the District Court is affirmed.

2. "Q. And when you were asked by Mr. Kerwin in the presence of the bank officers if you wished to make a statement as to the amounts and dates that short-

ages occurred, you voluntarily admitted that you had taken this money?
"A. I volunteered to sign the statement, yes."