Commonwealth *v.* Jones, Appellant.

424

Argued April 27, 1973. Before EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Hal F. Doig,* for appellant.

*Maxine J. Stotland,* Assistant District Attorney, with her *Milton M. Stein,* Assistant District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE NIX, July 1, 1974:

This is a direct appeal after convictions on charges of murder in the first degree, burglary, and aggra-

vated robbery.[1] Appellant raises three issues: (1) that he was arrested without probable cause in violation of the Fourth and Fourteenth Amendments to the United States Constitution and that evidence seized as a result of that arrest was therefore inadmissible at trial; (2) that the confession elicited from appellant was tainted by the illegal arrest and therefore inadmissible; and (3) that the confession was coerced in violation of the Fifth and Fourteenth Amendments to the United States Constitution and was therefore inadmissible at trial.

At approximately 2:30 p.m. on June 25, 1969, Roger Crudup was shot and killed during the robbery of his grocery store at 5416 Westminster Avenue in Philadelphia. A neighbor, Mr. Minor, testified that he saw two boys outside of the store who were joined by three others fleeing from the store. Mr. Minor chased the boys in his car south on 54th Street to Ogden Street, and east on Ogden to 52nd Street where three of the boys caught a bus and two fled down an alley. At that point, Officer Green took up the chase until he lost track of one of the boys at 50th and Brown Streets.

Officer Abrams testified that he received information on the police radio that a robbery had been committed at 54th and Westminster by "four or five Negro males between the ages of 17 and 21 in dark clothing" and that the robbers had fled eastward. Officer Abrams observed the appellant, who fit the above description, walking very fast in the 4900 block of

---

[1] The non-homicide charges were appealed directly to this Court. Since the Commonwealth has made no objection to jurisdiction, we will consider all charges for which appellant was convicted in this opinion. *See*, Appellate Court Jurisdiction Act, Act of July 31, 1970, P. L. 673, No. 223, Art. V, §503, 17 P.S. §211.503 (1973-74 Supp.) *Commonwealth v. McNeal*, 456 Pa. 394, 319 A.2d 669 (1974).

Parrish Street, breathing heavily,[2] perspiring, and frequently looking over his shoulder.[3] The officer stopped the appellant and asked him where he was coming from. Appellant replied that he had been to a girl friend's house at 53rd and Poplar. Officer Abrams flagged down a patrol wagon manned by Officers Stafford and Chapman. Those officers frisked the appellant prior to ordering him into the police van to be taken to Misercordia Hospital for possible identification by the victim.[4] They testified that such a frisk was "standard procedure" prior to transporting a prisoner. The frisk revealed a .32 caliber ammunition "clip" which was introduced at trial.

The court below found that the initial officer had probable cause to apprehend the appellant and that the subsequent search was incident to a lawful arrest. We agree.[5] Under exigent circumstances, the Fourth Amendment allows a warrantless arrest. However, the arrest must be based upon probable cause. *See, McCray v. Illinois,* 386 U.S. 300 (1966); *Ker v. California,* 374 U.S. 23 (1963); *Commonwealth v. Kenney,* 449 Pa. 562, 565, n.2, 297 A.2d 794 (1972) and cases

---

[2] Officer Abrams first mentioned appellant's heavy breathing during his testimony at trial.

[3] Forty-ninth and Parrish Streets is approximately two blocks from 50th and Brown Streets.

[4] The condition of the victim made identification at that time impossible.

[5] We recognize that even in the absence of probable cause an officer may take action short of an arrest to investigate suspicious behavior. *Terry v. Ohio,* 392 U.S. 1 (1968). *See also, Adams v. Williams,* 407 U.S. 143 (1972), *Sibron v. New York,* 392 U.S. 40 (1968). However, the words and actions of the officers in this case clearly indicate that they intended to and did in fact go beyond the narrowly circumscribed intrusion sanctioned in *Terry.* For that reason, and in view of our holding that probable cause existed, we need not discuss the issue of whether the officer's search was justified under *Terry* and its progeny.

cited therein. *Commonwealth v. Garvin*, 448 Pa. 258, 293 A.2d 33 (1972). The crucial test is whether there were facts available at the time of the initial apprehension which would justify a man of reasonable caution in the belief that a crime had been committed and that the individual arrested was the probable perpetrator. *McCray v. Illinois, supra; Ker v. California, supra; Commonwealth v. DeFleminque,* 450 Pa. 163, 299 A.2d 246 (1973); *Commonwealth v. Sharpe,* 449 Pa. 35, 296 A.2d 519 (1972); *Commonwealth v. Brayboy,* 431 Pa. 365, 246 A.2d 675 (1968). We have further stated that "[m]ere suspicion is not enough and the burden is on the Commonwealth to show with reasonable specificity facts sufficient to establish that probable cause existed. Beck v. Ohio, 379 U.S. 89 (1964)." *Commonwealth v. Holton,* 432 Pa. 11, 14-15, 247 A.2d 228 (1968). Here there is no question that the officers had a reasonable basis for believing that a crime had been committed. The issue is whether there was sufficient information available at the time of the apprehension to reasonably justify a belief that appellant was one of the perpetrators.

In dealing with probable cause, we deal with probabilities—the factual and practical considerations of everyday life. *Brinegar v. United States,* 338 U.S. 160, 175-76 (1949). In this case, the officer had a description of the assailants, albeit an extremely general one. He knew the direction of their flight, and the fact that they were on foot. Under these circumstances, we conclude that he acted reasonably in stopping the appellant six blocks from the scene of the robbery because the appellant fit the description given, was walking extremely quickly, breathing heavily, perspiring profusely and furtively looking over his shoulder.

The appellant's reliance upon *Commonwealth v. Pegram,* 450 Pa. 590, 301 A.2d 695 (1973) and *Commonwealth v. Berrios,* 437 Pa. 338, 263 A.2d 342 (1970)

is misplaced. In *Pegram, supra,* the decision turned on the fact that flight alone is insufficient to supply probable cause.[6] Here, the four suspects were actually observed fleeing from the scene of the crime contemporaneously with the discovery of the criminal conduct. Appellant does not, nor could he successfully contend that there would have been no cause to arrest those who fled the robbery. The issue is whether the officer who apprehended appellant had sufficient basis to conclude that the person he stopped was one of the original four or five men observed leaving the scene. For the reasons stated above, we conclude that he did have sufficient basis to so conclude.

In *Berrios, supra,* our concern was the right to restrain for investigation where the officer was acting without probable cause sufficient to justify an arrest. In that case, the Commonwealth had conceded the absence of probable cause and attempted to justify the stop and subsequent search on the basis of *Terry v. Ohio,* 392 U.S. 1 (1968). In *Berrios* there was a time lapse of 20 minutes from the time of the receipt of the information to the time that the officers came upon the suspects. Further, there was nothing about the action of those two individuals when seen by the officers that would suggest that they were two of the men who were being sought other than the fact of their race.

---

[6] " 'Flight, coupled with other factors, such as knowledge of the defendant's prior criminal record or the sight of contraband or screams for help or reliable information that defendant had attempted to commit or had committed a crime, may be strong indication that there is something that those fleeing wish to hide from the police and may constitute probable cause for arrest . . . However, *flight, in and of itself, is not sufficient to constitute probable cause for otherwise anyone, who does not desire to talk to the police and who either walks or runs away would always be subject to a legal arrest . . .'*" 450 Pa. at 593-4, 301 A.2d at 697, quoting *United States v. Margeson,* 259 F. Supp. 256 (E.D. Pa. 1966).

In this case, moments after the incident and the chase that ensued, this appellant was seen approximately two blocks from the point where he eluded his original pursuers, acting as if he were being chased and having a physical appearance of one who had been running. These facts, coupled with his physical appearance which conformed to the original description, provided adequate basis for the officer to reasonably believe that appellant was one of the perpetrators of the crime. We therefore conclude that the arrest was legal and that the ammunition clip seized incident thereto was admissible at trial. Since we find that appellant's arrest was legal, appellant's complaint that the confession should have been suppressed as a product of an illegal arrest necessarily must fail.

The final contention presented in this appeal is the voluntariness of that written statement.[7] The United States Supreme Court has made it clear that there is no simple litmus paper test for determining whether a confession is involuntary. Instead, courts must consider the totality of the circumstances surrounding the confession. *Culombe v. Connecticut,* 367 U.S. 568 (1961). *See also, Spano v. New York,* 360 U.S. 315 (1959); *Commonwealth ex rel. Butler v. Rundle,* 429 Pa. 141, 239 A.2d 426 (1968). The burden is on the Commonwealth to demonstrate that the accused's will was not overborne, either through physical or mental pressure and that the statement issued from free choice. *Watts v. Indiana,* 338 U.S. 49 (1949); *Haley v. Ohio,* 332 U.S. 596 (1948); *Commonwealth v. Simms,*

---

[7] This challenge is based solely on the allegation that the confession was coerced under the totality of the circumstances. *See, Spano v. New York,* 360 U.S. 315 (1959); *Commonwealth ex rel. Butler v. Rundle,* 429 Pa. 141, 239 A.2d 426 (1968). There is no claim that the confession is inadmissible under either *Miranda v. Arizona,* 384 U.S. 436 (1966) or *Commonwealth v. Futch,* 447 Pa. 389, 290 A.2d 417 (1972).

455 Pa. 599, 317 A.2d 265 (1974); *Commonwealth v. Alston,* 456 Pa. 128, 317 A.2d 241 (1974); *Commonwealth v. Moore,* 454 Pa. 337, 311 A.2d 620 (1973); *Commonwealth v. Youngblood,* 453 Pa. 225, 307 A.2d 922 (1973); *Commonwealth v. Eiland,* 450 Pa. 566, 301 A.2d 651 (1973); *Commonwealth ex rel. Butler v. Rundle, supra.*

Ordinarily, where the trial court has ruled that the statement of the accused was voluntarily given, our review is limited to a consideration of the testimony of the witnesses offered by the Commonwealth and that portion of the testimony for the appellant which remains uncontradicted. In the case at bar, however, the judge who presided over the suppression hearing died without having rendered findings of fact or conclusions of law. By agreement of counsel, another judge was presented with a full transcript of the proceedings and asked to rule on the pre-trial motions. It was this substitute judge who denied the motions. That decision was of necessity rendered on the same "cold" record now before this Court by one who had no opportunity to hear the witnesses' testimony and observe their demeanor. In such a situation this Court is equally competent to form an opinion as to the facts from the evidence appearing in the record. See generally, *Stanko v. Males,* 390 Pa. 281, 135 A.2d 392 (1957); *Poelcher v. Poelcher,* 366 Pa. 3, 76 A.2d 222 (1950). Having reviewed the record in this case, we agree with the suppression judge that the Commonwealth has met its burden of proving that appellant's will was not overborne and that his statement was the product of his free choice.

Detective Thompson, the principal investigator, testified to the following chronology: At 3:45 P.M. on June 25, 1969, appellant was brought to homicide headquarters and placed in a small air-conditioned room with a table and a few chairs. One arm was handcuffed to a chair and he was given the warnings mandated by *Mi-*

*randa v. Arizona*, 384 U.S. 436 (1966). Detective Thompson interviewed him until 4:05, obtaining information such as name, address, school and employment. Appellant was thereupon left in the room alone until 4:30. Detective Thompson then questioned him about the shooting until 5:10, when appellant was permitted to use the rest room. Up to that point, appellant denied being anywhere near the scene of the crime. Appellant was then left alone until 5:45, when Officer Thornton and Detective Thompson again questioned him until 6:30. Detective Kestner joined the group for a brief period. During this interview, appellant admitted that he was outside the store at the time of the shooting but he denied any involvement in the crime.

At this point, the investigating officers requested appellant to take a polygraph test. That test lasted from 7:15 until 10:25, and during that time appellant admitted his criminal intention and involvement in the crime. Appellant was again permitted to use the rest room and a sandwich that had been ordered earlier arrived. From 10:40 P.M. to 1:05 A.M., appellant was again warned, and his formal statement was transcribed, typed and signed. In that statement, he again waived his *Miranda* rights and admitted his involvement in the crime.

Appellant points to several factors to negate the Commonwealth's evidence that the confession was voluntary. He testified that he was seventeen and that he had only completed the seventh grade after being expelled from a parochial school. While this fact alone would not invalidate the confession of one who has reached the age of seventeen, it is a factor to be considered. *Commonwealth v. Fogan*, 449 Pa. 552, 296 A.2d 755 (1972). Appellant also stated that he had been drinking heavily the morning of his arrest. Again, intoxication is a factor to be considered, but it is not sufficient, in and of itself to render the confession involun-

tary. *Commonwealth v. Smith*, 447 Pa. 457, 291 A.2d 103 (1972). Other facts cited by appellant are: (1) That he was sleepy; (2) that he appeared sloppy and disheveled and (3) that he was hungry. The Commonwealth countered such evidence with testimony of Officer Thompson that although appellant had a faint odor of alcohol, he did not appear intoxicated. Two other officers testified that appellant appeared alert and responsive. He told Detective McCauley that he had slept eight hours the night before his arrest and he did not complain of being tired. He admitted eating doughnuts shortly before the incident and his meal was ordered around 7:00 P.M. Although there was a mistake that delayed the meal until 11:00 P.M., there was no indication that the police deliberately withheld the meal as a device to induce the confession nor is there any suggestion that the absence of food weakened his will.

Appellant also points to the fact that his relatives were not notified of his arrest. There was testimony that police officers visited appellant's home to speak with his family and found his grandfather who was crippled and his sister who was intoxicated. Neither relative was in a position to give appellant assistance. Appellant complains that officers did not comply with his request to notify his aunt of his arrest, however the officers denied that any such request was made. Appellant suggests that he was promised that he could go home if he confessed and that he was threatened with physical harm if he did not. The Commonwealth's evidence categorically denied that any threats or promises were made nor can we accept that the accused could have been misled by the alleged ruse of telling him that if he confessed to participation in a robbery-murder they would release him.

Finally, appellant complains that Detective Thompson tricked him by contradicting his exculpatory statements with a statement allegedly received from another

suspect. We agree with appellant that there is substantial basis on this record justifying the conclusion that the interrogating officers may have deceived appellant into believing that a co-defendant had implicated him where such was not the case. In judging whether the use of artifice, deception or fraud will invalidate a confession, we must look to the basic rationale behind the exclusion of coerced confessions. Courts will, of course, invalidate confessions resulting from a subterfuge that is likely to produce an untrustworthy confession. *United States ex rel. Caminito v. Murphy*, 222 F.2d 698 (2d Cir. 1955), *cert. denied*, 350 U.S. 896; *Commonwealth v. Walker*, 433 Pa. 124, 249 A.2d 283 (1969). See generally, Anno., 99 A.L.R. 2d 772. In addition, the United States Supreme Court has offered another rationale for invalidating confessions.

"The abhorrence of society to the use of involuntary confessions does *not turn alone on their inherent untrustworthiness. It also turns on the deep-rooted feeling that the police must obey the law while enforcing the law; that in the end life and liberty can be as much endangered from illegal methods used to convict those thought to be criminals as from the actual criminals themselves.* Accordingly, the actions of police in obtaining confessions have come under scrutiny in a long series of cases." (Footnote omitted) (Emphasis added). *Spano v. New York, supra*, 360 U.S. at 321. Thus, where the subterfuge is so reprehensible as to offend basic societal notions of fairness, the confession obtained therefrom should be excluded. *Spano v. New York, supra; Leyra v. Denno*, 347 U.S. 556 (1954). Finally, we must recognize that to be valid, a waiver of Fifth Amendment rights must be intelligently made. *Miranda v. Arizona*, 384 U.S. 436 (1966). Just as a waiver cannot be intelligent where the accused is ignorant of crucial facts, the waiver may also be unintelligent where crucial facts are misrepresented. Thus, we must

also determine whether the subterfuge employed by the police precluded the accused from making a knowing and intelligent waiver.

In the case at bar we are not convinced that the alleged fabrication concerning the co-defendant's confession was likely to cause an untrustworthy confession. Nor do we find it so reprehensible as to invalidate the confession as offensive to basic notions of fairness. The United States Supreme Court recently considering a quite similar factual situation observed: "The fact that the police misrepresented the statements that [the co-defendant] had made is, while relevant, insufficient in our view to make this otherwise voluntary confession inadmissible." *Frazier v. Cupp*, 394 U.S. 731, 739 (1969) ; *See also, Commonwealth v. Baity*, 428 Pa. 306, 315, 237 A.2d 172 (1968) (Opinion of Mr. Justice ROBERTS) ; *People v. Robinson*, 31 App. Div. 724, 297 N.Y.S. 2d 82 (1968).

Nor do we believe that this subterfuge precluded the exercise of a knowing waiver. Of course, an accused *must* know the nature of his Constitutional rights and we caution that *any* misrepresentation which may cast doubt upon the accused's awareness of these rights would necessarily render the waiver suspect. However, in the case at bar, we are dealing not with a misrepresentation of rights, but with a misrepresentation concerning the amount of evidence against the accused. While we emphasize that we do not condone deliberate misrepresentation of facts supplied to an accused at a time when he must elect to waive a Constitutional right, we do not believe that a misrepresentation, even though intentional, as to the evidence available against him is the type of information that would so distort the factual situation confronting him as to render his waiver unknowing and unintelligent.

Finally, appellant challenges the use of the lie detector during his interrogation. The glaring weakness in

this argument lies in the fact that he signed a written statement waiving any objections to taking the test and yet he does not allege that such a waiver was invalid. Absent an allegation that his waiver was not valid, we must assume that appellant elected to take the test hoping to convince the police of his innocence and having failed to do so cannot be now heard to complain. Under all of the evidence, we are satisfied that the confession was voluntarily and intelligently made and thus properly admitted in evidence against him at trial.

Judgment of sentence affirmed.

Mr. Chief Justice JONES took no part in the consideration or decision of this case.

---

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

I dissent. I can agree neither that there was probable cause to arrest appellant, see *Commonwealth v. Favors,* 227 Pa. Superior Ct. 120, 125, 323 A.2d 85, 88 (1974) (SPAETH, J., dissenting, joined by HOFFMAN, J.), nor that under the totality of circumstances test, appellant's confession was voluntarily given, see *Commonwealth v. Simms,* 455 Pa. 599, 317 A.2d 265 (1974).