406 A.2d 1017

**COMMONWEALTH of Pennsylvania**

v.

**Donald L. STARR, Jr., Appellant.**

Supreme Court of Pennsylvania.

Argued May 21, 1979.

Decided Oct. 1, 1979.

John H. Chronister, Asst. Public Defender, for appellant.

John C. Uhler, Dist. Atty. of York County, Sheral Ann Dorney, Asst. Dist. Atty., for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, MANDERINO and LARSEN, JJ.

## OPINION OF THE COURT

O'BRIEN, Justice.

Appellant, Donald L. Starr, Jr., was tried by a judge sitting without a jury and convicted of murder of the second degree for the stabbing death of Wilbur Grim during a robbery. Post-verdict motions were denied and appellant was sentenced to life imprisonment. This appeal followed.

Appellant raises only one issue in this appeal. He alleges the trial court erred in refusing his pretrial motion to suppress his confession. The facts are as follows.

Once appellant became suspect in the instant homicide, he was asked to go to the state police barracks for purposes of taking a polygraph examination. Once at the barracks, appellant met with Trooper John B. Kelly, the polygraph examiner. Trooper Kelly explained how the test would be administered, and then fully informed appellant of his applicable constitutional rights. As Trooper Kelly testified:

" . . . When I give the rights form, I get into the third paragraph there that deals with the polygraph instrument specifically. I reiterate there. I read him those rights. And, by the way, when I read those rights, I interject the fact that anything he says can and will be used against him. Polygraph charts in all cases are not used in court. But I didn't want to mislead him, and I did relate to him that there are some circumstances where polygraphs have been admitted in court either by stipulation or court order or as an issue. . . ."

Appellant was then asked if he would be willing to take the examination. He originally was somewhat reluctant to take the test. When Trooper Kelly questioned him as to why he was reluctant, appellant agreed to take the examination.

Following the examination, Kelly indicated to appellant that the results indicated deception on appellant's part when he denied participation in the Grim stabbing. Shortly thereafter, appellant was again informed of his constitutional rights, which he waived. He then admitted killing the victim in the course of a robbery.

However, appellant testified:

" . . . Well, he started talking to me about the case, the seriousness of it. And then he brought up—he said, 'I noticed on your test you reacted strongly to some of the questions.' I said, 'Well, yeah, I'm kind of upset about it.' And we kept talking a little bit. Then Kelly came into the room and laid the results of the test in front of me and said, 'I know you're lying, I could see you're lying right here.' He says, 'Do you notice any differences on the test with the paper?' And I showed him what I could see, and I don't know anything about how they read it. And then he pointed and said, 'Well, here's your strong points right here,' and showed me what the questions were, where they had them numbered on the paper. Then he told me, 'Look, actually,' he says, 'as far as me being involved in this case, this is all I was involved in, is giving the test.' 'But,' he said, 'I don't really care, you don't have to say anything if you don't want to, but the thing is I can point it out right here; now, I'm a pro at this, and I can tell you that you're lying.' And he told me that whether I said anything or not, it didn't really matter, that he'd be showing it to the district attorney and the judge. 'And,' he said, 'when I show it to them, they're going to listen to what I have to say, because they know I'm a pro at this.' So, right there, I figured, well, they got me. . . ."

He then admitted killing the victim.

We note preliminarily the applicable test. "When the admissibility of a confession is challenged, the prosecution at

the suppression hearing has the burden of proving that the defendant made a knowing and intelligent waiver of his rights when being questioned by the police; that waiver must be shown by a preponderance of the evidence." [Citations omitted].

. "In deciding whether the burden has been met, we consider the testimony of the prosecution witnesses, and that portion of the evidence offered by the defense that remains uncontradicted." [Citations omitted]. *Commonwealth v. Jones,* 459 Pa. 286, 289, 328 A.2d 828, 829 (1974).

Appellant claimed the waiver of his *Miranda* rights was ineffective because Trooper Kelly's representations led appellant to believe the results of the polygraph examination could be used as evidence against him. The burden, thus, fell to the prosecution to demonstrate by a preponderance of the evidence that no such misleading representations were made.

The suppression court, approaching the heart of the matter, inquired of Trooper Kelly:

"Q. [by the court] Could you have said something like his testimony, which was that after you showed the results of the test to the judge and to the district attorney, they would accept your word as a pro and they would know that he was lying? Could you have said something like that to him?

"A. If I would have, the context of it would have been in the form of telling him that the charts speak for themselves, they could be checked by anyone, I have 100 percent confidence in the results of the testing, and anybody that reviewed them or checked them would have to agree, that was qualified and competent."

This equivocating answer by the Commonwealth's principal witness to the critical question of precisely what representations were made to appellant falls short of satisfying the burden which adhered to the prosecution. This is especially so where it is uncontradicted that *some* representations, at least, were made to appellant concerning the use to which the polygraph results might be put and the effect

which they might have. The record of the suppression hearing does not indicate the Commonwealth met its burden of proving the representations made did not impinge with such force upon appellant's understanding of his right to remain silent so as to render his decision to waive that right a knowing and voluntary one.

Reversed and remanded for a new trial.

NIX and LARSEN, JJ., file dissenting opinions.

NIX, Justice, dissenting.

I am forced to vigorously register my dissent to today's Opinion of the Court. The majority Opinion entirely misreads, and accordingly fails to cite, our prior cases on the issue of the nature of the representations made to a defendant and that allegedly result in a confession. In *Commonwealth v. Jones,* 457 Pa. 423, 435, 322 A.2d 119, 126–27 (1974), this Court stated:

"In the case at bar we are not convinced that the alleged fabrication concerning the co-defendant's confession was likely to cause an untrustworthy confession. Nor do we find it so reprehensible as to invalidate the confession as offensive to basic notions of fairness. The United States Supreme Court recently considering a quite similar factual situation observed: 'The fact that the police misrepresented the statements that [the co-defendant] had made is, while relevant, insufficient in our view to make this otherwise voluntary confession inadmissible.' *Frazier v. Cupp,* 394 U.S. 731, 739, 89 S.Ct. 1420, 1425, 22 L.Ed.2d 684 (1969); See also, *Commonwealth v. Baity,* 428 Pa. 306, 315, 237 A.2d 172 (1968) (Opinion of Mr. Justice Roberts); *People v. Robinson,* 31 A.D.2d 724, 297 N.Y.S.2d 82 (1968).

Nor do we believe that this subterfuge precluded the exercise of a knowing waiver. Of course, an accused must know the nature of his Constitutional rights and we caution that any misrepresentation which may cast doubt upon the accused's awareness of these rights would necessarily render the waiver suspect. However, in the case at bar, we are dealing not with a misrepresentation of rights,

but with a misrepresentation concerning the amount of evidence against the accused. While we emphasize that we do not condone deliberate misrepresentation of facts supplied to an accused at a time when he must elect to waive a Constitutional right, we do not believe that a misrepresentation, even though intentional, as to the evidence available against him is the type of information that would so distort the factual situation confronting him as to render his waiver unknowing and unintelligent."

Today's Opinion stands the law on this issue upside down. The representations appellant alleges were made are not of the type or nature that would preclude the finding of a knowing or voluntary waiver.

I therefore dissent.

LARSEN, Justice, dissenting.

I dissent; a new trial is an unnecessary prolongation of this case.

Assuming appellant's version of the facts surrounding his confession (namely, that immediately prior to his confession, Trooper Kelly told him that "he'd be showing . . . [appellant's polygraph examination] to the district attorney and the judge"), Trooper Kelly's statement was not such that it was "likely to cause an untrustworthy confession" nor was it "so reprehensible as to invalidate the confession as offensive to the basic notions of fairness." *Commonwealth v. Jones,* 457 Pa. 423, 435, 322 A.2d 119, 126 (1974).

In holding that appellant's confession was admissible, the suppression court found:

> . . . [D]efendant frankly admitted that he was fully advised of his constitutional rights, including the right to refuse to take the [polygraph] test and to refuse to answer any questions and to remain silent, both before and after the test was administered and before he made any subsequent statements, and that he was not coerced, intimidated or mistreated in any way.

.    .    .    .    .

536

We conclude that defendant's confession was intelligently and voluntarily given after full and complete advice as to his constitutional rights, that none of such rights were infringed, and that such confession is therefore admissible in evidence.

The record supports the suppression court's findings and, therefore, I would affirm appellant's judgment of sentence.