562 A.2d 868

**COMMONWEALTH of Pennsylvania**

**v.**

**Mervin D. SCHNEIDER, Appellant.**

Superior Court of Pennsylvania.

Argued Feb. 1, 1989.

Filed July 24, 1989.

Allen H. Smith, York, for appellant.

Mark A. Bellavia, Asst. Dist. Atty., York, for Com., appellee.

Before WIEAND, POPOVICH and HESTER, JJ.

WIEAND, Judge:

The principal issue in this direct appeal from a judgment of sentence imposed following a conviction for aggravated assault is the effect of a polygraph test, if any, on the voluntariness of appellant's incriminatory statement to the police. We do not perceive therein or in other issues raised by appellant any basis for setting aside the jury's finding of guilt; and, therefore, we affirm the judgment of sentence.[1]

On the morning of December 30, 1986, nine month old Brandon Ray Silar was left in the custody of Mervin D. Schneider while the child's mother and Schneider's girl-friend, Jennifer Silar, went to work. The child, while in Schneider's custody, suffered a fractured skull and other head injuries and was taken by ambulance to York Hospital. The incident was investigated by State Trooper Robert DeWire, who was told by Schneider that the child had fallen from a bed while Schneider was lifting weights in another room. When the treating physician suggested that the child's injuries were not consistent with a fall from a bed, DeWire advised Schneider of the physician's opinion and asked him to take a polygraph test to aid the investigation. He told Schneider that there was no requirement that he submit to a polygraph and suggested that he consult a lawyer before submitting to the test. Schneider agreed to submit to the test.

---

1. Appellant was sentenced to serve a term of imprisonment for not less than four (4) years nor more than ten (10) years.

DeWire provided transportation for Schneider, and during the trip to Harrisburg for the polygraph he told Schneider that the test would indicate whether he was lying. He did not tell Schneider, however, the use, if any, which could be made of the results of the test. Upon arrival in Harrisburg, Trooper Matthew Brennan, the polygraph examiner, advised Schneider of his constitutional right to remain silent and that he would waive any civil liability in connection with the polygraph test. He also told Schneider that his taking the polygraph test was entirely voluntary and that he could stop the test and would be free to leave at anytime. The results of the test, he said, were admissible evidence in twenty-six states but could not be used in Pennsylvania, although any statements made during the test could be used against him. Brennan also said that if the test showed that Schneider was lying, the results would be given to the investigating officer and to the district attorney. If he was telling the truth, Brennan said, he would stand by Schneider, but if he lied, "he was caught." Schneider agreed to submit to the test and signed a written "waiver" of his rights.

At the conclusion of the test, Brennan concluded that Schneider was lying about the circumstances surrounding the trauma to the child. Brennan confronted Schneider with the results of the polygraph and, according to his subsequent testimony, coaxed Schneider to tell the truth by stressing the importance of the truth and rationalizing the ease with which one could lose patience with children. Schneider ultimately admitted that he had lost patience with the child while changing his diaper and had struck the child, causing him to fall and sustain injury. While DeWire was transporting Schneider back to his home, Schneider gave a similar statement in which he again admitted having struck the child, causing him to fall, whereupon the child hit his head and became unconscious. Schneider was subsequently arrested, charged and ultimately found guilty of aggravated assault.

■ In reviewing an order denying a motion to suppress evidence, this Court must

> determine whether the factual findings of the [suppression] court are supported by the record. In making this determination, we consider only the evidence of the prosecution's witnesses and so much of the evidence for the defense, as, fairly read in the context of the record as a whole, remains uncontradicted. If, when so viewed, the evidence supports the factual findings, we are bound by such findings and may only reverse if the legal conclusions drawn therefrom are in error. *Commonwealth v. Trenge*, 305 Pa.Super. 386, 451 A.2d 701 (1982).

*Commonwealth v. Chamberlain*, 332 Pa.Super. 108, 112, 480 A.2d 1209, 1211 (1984). See also: *Commonwealth v. Kichline*, 468 Pa. 265, 280–281, 361 A.2d 282, 290 (1976); *Commonwealth v. Stark*, 363 Pa.Super. 356, 365, 526 A.2d 383, 388 (1987); *Commonwealth v. DiNicola*, 348 Pa.Super. 405, 409, 502 A.2d 606, 608 (1985).

In determining the voluntariness of a defendant's' statements made while in police custody, the Supreme Court has established the following guidelines:

> Although there is no single litmus-paper test for determining the voluntariness of a confession, it must be established that the decision to speak was a product of a free and unconstrained choice of its maker. See *Culombe v. Connecticut*, 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961); *Commonwealth v. Ritter*, 462 Pa. 202, 340 A.2d 433 (1975); *Commonwealth v. Alston*, 456 Pa. 128, 317 A.2d 241 (1974); *Commonwealth v. Eiland*, 450 Pa. 566, 301 A.2d 651 (1973); *Commonwealth ex rel. Butler v. Rundle*, 429 Pa. 141, 239 A.2d 426 (1968). All attending circumstances surrounding the confession must be considered in this determination. These include: the duration and methods of the interrogation; the length of delay between arrest and arraignment; the conditions of detainment; the attitudes of the police toward defendant; defendant's physical and psychological state; and all other conditions present which may serve to drain one's

power of resistance to suggestion or to undermine one's self-determination. See *Culombe v. Connecticut,* supra 367 U.S. at 602, 81 S.Ct. at 1879; *Commonwealth v. Boyd,* 461 Pa. 17, 30–32, 334 A.2d 610, 617–18 (1975); *Commonwealth v. Purvis,* 458 Pa. 359, 364, 326 A.2d 369, 371 (1974); *Commonwealth v. Simms,* 455 Pa. 599, 602–03, 317 A.2d 265, 267 (1974).

Moreover, when ... the question of voluntariness involves degrees of psychological coercion, "the most careful attention will be afforded to any facts, circumstances, or events tending to overbear an accused's will." *Commonwealth v. Simms,* supra at 603, 317 A.2d at 267; see *Commonwealth v. Goodwin,* 460 Pa. 516, 521, 333 A.2d 892, 895 (1975); *Commonwealth ex rel. Butler v. Rundle,* supra 429 Pa. at 149, 239 A.2d at 430 (1968). Defendant may be so emotionally and psychologically distraught or unbalanced that this factor alone may make his confession involuntary. *Commonwealth v. Ritter,* supra.

*Commonwealth v. Kichline, supra* 468 Pa. at 279, 361 A.2d at 289–290 (1976). See also: *Commonwealth v. Hughes,* 521 Pa. 423, 442, 555 A.2d 1264, 1273 (1989); *Commonwealth v. D'Amato,* 514 Pa. 471, 481, 526 A.2d 300, 304–305 (1987); *Commonwealth v. Carter,* 377 Pa.Super. 93, 101–102, 546 A.2d 1173, 1177 (1988).

"It has long been the rule in this Commonwealth that a statement given after being advised that one has failed a lie detector may be admitted into evidence." *Commonwealth v. Watts,* 319 Pa.Super. 179, 184, 465 A.2d 1288, 1291 (1983), *aff'd,* 507 Pa. 193, 489 A.2d 747 (1985). See: *Commonwealth v. Jones,* 341 Pa. 541, 19 A.2d 389 (1941); *Commonwealth v. Hipple,* 333 Pa. 33, 3 A.2d 353 (1939). See also: *Commonwealth v. Hughes, supra* 521 Pa. at 442 n. 8, 555 A.2d at 1274 n. 8 (1989). See generally: Annot., Admissibility in Evidence of Confession Made by Accused in Anticipation of, During, or Following Polygraph Examination, 89 A.L.R.3d 230 (1979). In *Commonwealth v. Smith,* 317

Pa.Super. 118, 463 A.2d 1113 (1983), the Superior Court said:

The polygraph has been acknowledged by the courts of this Commonwealth to be a valuable tool in the investigative process. See: *Commonwealth v. Hernandez*, 498 Pa. 405, 415, 446 A.2d 1268, 1273 (1982); *Commonwealth v. Smith*, 487 Pa. 626, 631, 410 A.2d 787, 790 (1980); *Commonwealth v. Blagman*, 458 Pa. 431, 435–436, 326 A.2d 296, 298–299 (1974). Its use does not per se render a confession involuntary. *Commonwealth v. Jones*, 341 Pa. 541, 548, 19 A.2d 389, 393 (1941); *Commonwealth v. Hipple*, 333 Pa. 33, 39, 3 A.2d 353, 355–356 (1939). See: *Thompson v. Cox*, 352 F.2d 488 (10th Cir.1965); *United States v. McDevitt*, 328 F.2d 282 (6th Cir.1964). A confession is not involuntary merely because it was made in anticipation of, during, or following a polygraph examination. See: 89 ALR3d 236, and cases there gathered. In Pennsylvania, an inculpatory statement made during a pre-test interview was held admissible in *Commonwealth v. Cain*, 471 Pa. 140, 146, 369 A.2d 1234 (1974) (Opinion of Eagen, J., in support of affirmance). Other decisions have impliedly found *Miranda* warnings adequate, for they have permitted evidentiary use of confessions when they have been made voluntarily in polygraph settings. See also: *Commonwealth v. Hernandez, supra; Commonwealth v. Hitson*, 482 Pa. 404, 393 A.2d 1169 (1978); *Commonwealth v. Dussinger*, 478 Pa. 182, 386 A.2d 500 (1978) (plurality opinion); *Commonwealth v. Cunningham*, 471 Pa. 577, 370 A.2d 1172 (1977); *Commonwealth v. Cain, supra; Commonwealth v. Johnson*, 467 Pa. 146, 354 A.2d 886 (1976); *Commonwealth v. Jones*, 457 Pa. 423, 322 A.2d 119 (1974); *Commonwealth v. Blagman, supra; Commonwealth v. Marabel*, 445 Pa. 435, 283 A.2d 285 (1971); *Commonwealth v. Camm*, 443 Pa. 253, 277 A.2d 325 (1971), *cert. denied*, 405 U.S. 1046, 92 S.Ct. 1320, 31 L.Ed.2d 589 (1972). In *Wyrick v. Fields*, 459 U.S. 42, 103 S.Ct. 394, 74 L.Ed.2d 214 (1982), the defendant, a soldier accused of rape, gave an inculpatory statement to investigators after being confronted with

the results of a polygraph test showing his answers to be untruthful. The Court of Appeals granted habeas corpus relief on grounds that appellant's waiver of counsel had not been voluntary. The Supreme Court reversed. The defendant had been informed of his *Miranda* rights and had signed a written waiver thereof. This was sufficient to demonstrate a voluntary waiver. See also: *Keiper v. Cupp,* 509 F.2d 238 (9th Cir.1975); *People v. Mason,* 29 Ill.App.3d 121, 329 N.E.2d 794 (1975); *Grey v. State* [273] Ind. [439] 404 N.E.2d 1348 (1980); *State v. Bowden,* 342 A.2d 281 (Me.1975); *Lee v. State,* 338 So.2d 395 (Miss. 1976); *State v. Clifton,* 271 Or. 177, 531 P.2d 256 (1975); *McAdoo v. State,* 65 Wis.2d 596, 223 N.W.2d 521 (1974).

There are no Pennsylvania decisions which have held *Miranda* warnings inadequate to insure voluntariness of a confession given during a pre-polygraph interview. If a suspect freely agrees to submit to a polygraph examination, ... there would seem to be no reason for holding *Miranda* warnings inadequate. Not only do such warnings advise the suspect that he has a right to remain silent and answer no questions, but they also instruct him regarding his right to consult counsel. Where an accused voluntarily confesses despite such warnings, his confession will not be rendered more voluntary because a consent to take a polygraph examination was accompanied by warnings that the results of the test have no evidentiary value and that his immediate release will not depend thereon.

*Id.* 317 Pa.Super. at 122–124, 463 A.2d at 1115–1116 (footnote omitted). If, however, the police mislead a suspect regarding the admissibility of the results of a polygraph examination, the courts of this Commonwealth have required the suppression of statements so induced. See: *Commonwealth v. Starr,* 486 Pa. 530, 406 A.2d 1017 (1979), *cert. denied,* 444 U.S. 1093, 100 S.Ct. 1061, 62 L.Ed.2d 782 (1980); *Commonwealth v. Watts, supra.* See also: *Commonwealth v. Hughes, supra.*

In *Commonwealth v. Hipple, supra,* the police had informed the defendant that "[y]ou can lie to us but you

cannot lie to this machine." The Supreme Court held that a confession induced thereby was not involuntary. The Court said:

> The statement by the officers, "You can lie to us but you cannot lie to this machine," in substance amounts to no more than the familiar phrase, "It would be better for you to tell the truth," which this court has often sanctioned. *Com. v. Weiss*, 284 Pa. 105, 130 A. 403; *Com. v. Spardute, supra* [278 Pa. 37, 122 A. 161 (1923)]. Here no inducement of material reward nor fear of punishment, conducive to eliciting an untrue statement, was employed. A confession, procured by a trick or artifice, not calculated to produce an untruth, is never vitiated thereby. *Com. v. Goodwin, supra; Com. v. Spardute, supra....* It is quite possible that [the defendant] was persuaded to [confess] by the use of the machine and what the officers told him concerning it. The record of the lie detector was not offered in evidence. Since the use of the device was for the purpose of inducing the defendant to tell the truth and not anything was done to influence him to do otherwise, an objection based solely on the fact that he was thus induced to confess cannot be sustained.

*Id.* 333 Pa. at 39, 3 A.2d at 356. See also: *Commonwealth v. Hughes, supra* 521 Pa. at 442 n. 8, 555 A.2d at 1274 n. 8. Cf. *Commonwealth v. Jones*, 457 Pa. 423, 433–435, 322 A.2d 119, 126–127 (1974) (where police allegedly made intentional misrepresentation to defendant regarding confession of co-defendant, confession of defendant was not invalidated as the misrepresentation was not likely to cause an untrustworthy confession nor was it so reprehensible as to offend basic notions of fairness). These decisions support the suppression court's refusal to suppress as involuntary the incriminating statements made by appellant in this case.

Appellant argues, however, that a different result is mandated by a more recent decision of the Supreme Court in *Commonwealth v. Starr, supra.* In that case, the Supreme Court determined that the Commonwealth had

failed to meet its burden of proving that a post-polygraph statement had constituted a voluntary waiver of the right to remain silent where a representation had been made to the defendant that his failure to pass the polygraph test would be shown to the judge and district attorney who would know that he was lying. Under these circumstances, the Court held, the Commonwealth had failed to meet "its burden of proving that representations made did not impinge with such force upon appellant's understanding of his right to remain silent so as to render his decision to waive that right a knowing and voluntary one." *Id.* 486 Pa. at 534, 406 A.2d at 1019. In the instant case, however, there was no representation that the results of the polygraph would be shown to the court or that it could in any way be used against appellant. Although told that the results would be shown to the investigating officer and district attorney, appellant was told that the test results could not be used against him in court. In this case, therefore, the evidence was sufficient to support the suppression court's finding that appellant's statement had been made voluntarily.

Appellant also contends that the state troopers failed to advise him fully of his *Miranda* [2] rights before he was asked to make a statement. However, this issue was not raised pre-trial or at trial. It was raised for the first time in post-trial motions. Consequently, neither the suppression court nor the trial court was ever asked to make a factual determination regarding such warnings. The issue, therefore, has been waived. See: *Commonwealth v. Scaine,* 337 Pa.Super. 72, 75, 486 A.2d 486, 487 (1984) (failure to raise suppression issue prior to trial precludes litigation of that issue for the first time at trial, in post-trial motions, or on appeal); *Commonwealth v. Throckmorton,* 241 Pa.Super. 62, 66, 359 A.2d 444, 446 (1976) (same). See also: *Commonwealth v. Johnson,* 484 Pa. 545, 400 A.2d 583 (1979) (Opinion in Support of Affirmance); *Commonwealth v. Wright,* 354 Pa.Super. 120, 511 A.2d 217 (1986).

2. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Moreover and in any event, the trial court concluded in its post-trial opinion that appellant "was properly advised of his rights and that he knowingly and intelligently waived them." On the record presented to this Court on appeal, we can find no basis for concluding otherwise.[3]

■ Appellant again challenged at trial the voluntariness of his statements to Troopers Brennan and DeWire. See: *Commonwealth v. Motley*, 472 Pa. 421, 372 A.2d 764 (1977); *Commonwealth v. Coach*, 471 Pa. 389, 370 A.2d 358 (1977). He argues on appeal that the trial court erred by preventing him from testifying at trial that he had been coerced to make a statement by the polygraph test. Although this is an issue of first impression in this Commonwealth, see *Commonwealth v. Cunningham*, 471 Pa. 577, 605 et seq., 370 A.2d 1172, 1185 (1977) (Dissenting Opinion by Roberts, J.), it is not properly before us, because it was not argued or preserved at trial.

The trial court, in an effort to protect appellant from the prejudice flowing from an inadvertent reference to the polygraph test, sought to avoid any reference to the test. Appellant's counsel agreed that such a reference should be avoided. Thus, when the Commonwealth called Trooper Brennan as a witness, the defense requested an offer of proof, and the following occurred:

> MR. BELLAVIA [Deputy District Attorney]: I propose to just go through his basic qualifications, ask him if he had an occasion to interview the Defendant on January 8 of 1987, whether his rights were read to him, what rights were read to him, whether the Defendant knowingly and intelligently waived those rights, and what statement he gave to the trooper.
>
> THE COURT: Is this the poligraph [sic] operator?

---

**3.** Both Trooper Brennan and Trooper DeWire testified at the suppression hearing that they had advised appellant of his "constitutional safeguards" prior to his making inculpatory statements to them. Trooper Brennan also testified that appellant read and signed a standard form indicating that he was waiving his constitutional rights prior to taking the polygraph examination. This waiver of rights form was admitted into evidence at the suppression hearing, but has not been included in the record certified to this Court on appeal.

MR. BELLAVIA: Yes.

THE COURT: And we're going to be sure that's not coming out in any way; is that correct?

MR. SMITH [Defense Counsel]: I'm going to try at this point to prevent it.

THE COURT: Yes. I just want to make it very, very clear to both sides that is not to come out at all, at all, at all.

Thereafter, while testifying on his own behalf, appellant made a reference to having taken a test. Upon the Commonwealth's objection, the following occurred during a sidebar conference:

MR. BELLAVIA [Deputy District Attorney]: I think he's getting into—

THE COURT: What are you doing?

MR. BELLAVIA: Well, I want Mr. Smith to lay off on the—You told me you weren't going to get into this, and you've been pressing and pressing him.

MR. SMITH [Defense Counsel]: No, that's not it. He told me that when he was asked questions by Brennan, Brennan gave the answers. Brennan was the one who would say this is what happened, isn't it. And that's what happened, isn't it. And that's how Brennan got his answers.

THE COURT: He asked him leading questions?

MR. SMITH: Exactly. Well, he had asked him several.

THE COURT: What do you want me to do about this test?

MR. SMITH: Ignore it.

MR. BELLAVIA: I think so.

THE COURT: Ignore it.

MR. BELLAVIA: Yes.

The record does not disclose that appellant ever made an offer at trial to prove that his confession was coerced by the polygraph test or that the trial court refused such a request. Appellant's attack on the voluntariness of his inculpatory statements was based, rather, on other grounds. His counsel, moreover, concurred in the trial court's admo-

nition that neither party should refer to the polygraph test. The first time he raised the present argument was in post-trial motions. This was too late. "It is fundamental that the parties in a trial are obligated to inform the court of alleged violations of evidence law or trial procedure, and that failure to so inform the court by a timely and specific objection, motion, exception, request, or offer of proof will constitute a waiver of that ground for relief." Packel & Poulin, Pennsylvania Evidence, Ch. I, § 103 at p. 5 (1987). See: *Commonwealth v. Clair*, 458 Pa. 418, 326 A.2d 272 (1974). See also: *Commonwealth v. Johnson*, 368 Pa.Super. 427, 435, 534 A.2d 511, 515 (1987) ("[T]he failure to raise an issue, objection, or argument in a timely manner during trial forecloses further review of an alleged error in post-trial motions or at the appellate level."); *Commonwealth v. Gordon*, 364 Pa.Super. 521, 534–537, 528 A.2d 631, 638–639 (1987).

Appellant's final argument is that the trial court erred when it allowed Dr. Charles M. Reilly, the chief pediatrician at York Hospital and the child's treating physician, and Dr. Edward F. Juskelis, a practitioner of family medicine at the same hospital, to diagnose the injuries sustained by Brandon Silar. It is argued that since neither doctor was qualified as a radiologist, he was incompetent to testify as to a diagnosis of the child's injuries when such diagnosis was based in part on x-rays and CT scans which had been interpreted by others but not introduced into evidence at trial. We disagree.

■■■ Initially, we note that, although Dr. Reilly conceded that he was not a radiologist, his testimony demonstrated sufficient training and experience in interpreting x-rays so that the trial court could properly conclude that he was "qualified to describe any personal knowledge he may have about the x-rays in this case. . . ." Furthermore, while expert testimony normally must be supported by evidence of record, the Supreme Court has carved out a narrow exception to this general rule. See generally: Packel & Poulin, Pennsylvania Evidence, Ch. VII, § 703 (1987). This exception allows "medical witnesses to express opinion tes-

timony on medical matters based, in part, upon reports of others which are not in evidence, but which the expert customarily relies upon in the practice of his profession." *Commonwealth v. Thomas,* 444 Pa. 436, 445, 282 A.2d 693, 698 (1971). See also: *Commonwealth v. Daniels,* 480 Pa. 340, 390 A.2d 172 (1978); *Commonwealth v. Karch,* 349 Pa.Super. 227, 502 A.2d 1359 (1986); *Commonwealth v. Gilliard,* 300 Pa.Super. 469, 446 A.2d 951 (1982); *Commonwealth v. Haddle,* 271 Pa.Super. 418, 413 A.2d 735 (1979). Physicians, in the practice of their profession, normally rely upon x-ray and CT scan reports in diagnosing serious head injuries. We conclude, therefore, that the exception created in *Commonwealth v. Thomas* is applicable to the instant case. See: *Commonwealth v. Wilson,* 245 Pa.Super. 415, 369 A.2d 471 (1976) (physician properly permitted to testify as to type of wound that defendant sustained when his testimony was based in part on x-rays, even though person who took the x-rays did not testify that the x-rays in question were those of defendant). The trial court did not err in allowing Dr. Reilly and Dr. Juskelis to testify regarding their diagnoses of the child victim's injuries.

The judgment of sentence is affirmed.