Vance CONTEE, Appellant,

v.

UNITED STATES, Appellee.

No. 94–CF–1267.

District of Columbia Court of Appeals.

Submitted Oct. 5, 1995.
Decided Nov. 13, 1995.

Bradford P. Johnson, Washington, DC, was on the brief, for appellant.

Eric H. Holder, Jr., United States Attorney, and John R. Fisher and Paul A. Quander, Jr., Assistant United States Attorneys, were on the brief, for appellee.

Before WAGNER, Chief Judge, and SCHWELB and FARRELL, Associate Judges.

PER CURIAM:

On this appeal from his convictions for, among other crimes, felony murder while armed, appellant's sole contention is that his tape-recorded confession to the police was involuntary in fact. We reject that contention. Although this court reviews the trial court's conclusion of voluntariness *de novo,* "[w]e will not disturb the trial court's [underlying] factual findings unless they are without substantial support in the evidence." *Hebron v. United States,* 625 A.2d 884, 885 (D.C.1993). The trial judge found, *inter alia,* that

> there's ... nothing in the testimony I heard about [appellant's] contact with the police before giving the tape[d] version [of his statement] which indicate[s] to me that in any fashion he was forced to give a statement or cajoled or tricked ... or ha-

rassed to a point where he felt there was ... nothing else he could do but give a statement or where his youth[1] was taken advantage of in such a fashion that it would lead to his giving a statement that would inculpate him as opposed to exculpate him.

There is substantial support in the record for these findings. Indeed, while appellant asserts the contrary, *i.e.,* that the police "used promises and implied threats" as well as "tricks and artifices" to obtain his confession, he generally does not articulate what those promises or tricks were, nor does the record support his bare assertions.[2]

The one matter that gives us pause is the fact that appellant openly confessed only after Lieutenant Boteler administered a computer voice stress analyzer (CVSA) test to appellant[3] and, based on the results thereof, told him "now I know," *i.e.,* that he knew appellant was deceptive in denying complicity in the shooting. The government, while pointing out that the results of the test were not sought to be admitted at trial,[4] concedes at least the argumentative possibility "that the officers untruthfully told appellant that the [CVSA] revealed that he was lying, when in fact the test did not indicate that," or did so unreliably. Even when police have admittedly deceived a suspect, however, the test for admissibility is still the voluntariness of the statement under the total circumstances. *E.g., Beasley v. United States,* 512 A.2d 1007, 1015–16 (D.C.1986), *cert. denied,* 482 U.S. 907, 107 S.Ct. 2485, 96 L.Ed.2d 377 (1987). The police explained to appellant "basically what the [CVSA] test consisted of" and that he was not required to take it. Appellant

"was anxious to take the test" because he insisted "he didn't do it [*i.e.,* the crime]." Moreover, appellant had "made admissions [though] no confessions" even before taking the CVSA test, acknowledging that he had been "with the individual who was previously charged in this offense before it occurred" and that he had been "on the scene of the shooting shortly after it occurred"—this after the police had confronted him with his girlfriend's refutation of his initially-asserted alibi. Finally, the police did not attempt to mislead appellant by suggesting the *admissibility* of the CVSA test results in any court proceeding. *Cf. Commonwealth v. Starr,* 486 Pa. 530, 406 A.2d 1017, 1018–19 (1979).

The Supreme Court has rejected a rule "that the use of polygraph 'results' in questioning ... is inherently coercive." *Wyrick v. Fields,* 459 U.S. 42, 48, 103 S.Ct. 394, 397, 74 L.Ed.2d 214 (1982). Thus, while undoubtedly "some measure of guile" is used when police tell an accused that his answers to questions monitored by a CVSA test are untruthful without also explaining that the test results are not conclusive, this "need not result in [a finding of] involuntariness without some showing that the deception was so fundamentally unfair as to deny due process ... or that a promise or threat was made that could induce a false confession." *People v. Sohn,* 148 A.D.2d 553, 539 N.Y.S.2d 29, 31 (2 Dept.1989) (citations omitted). *See also Johnson v. State,* 31 Md.App. 303, 355 A.2d 504, 506–07 (1976). Here, the record reveals no circumstances of coercion or trickery that, in combination with the CVSA test, can fairly be said to have overborne appellant's free

---

1. Appellant was seventeen, going on eighteen, at the time of the statement. The trial judge recognized his obligation to pay special attention to the danger of coercion when the person interrogated is a youth. *Cf. In re J.M.,* 619 A.2d 497 (D.C.1992) (en banc) (voluntariness of consent).

2. We note that appellant makes no claim of a violation of the requirements of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

3. Boteler explained that this test "measures stress in the voice caused by the absence of certain waves that occur as a result of lying."

4. Although this court has never had occasion to consider the admissibility of CVSA test results in a criminal trial, it is well settled that the results of lie detector tests are inadmissible in this jurisdiction. *See Smith v. United States,* 389 A.2d 1356, 1359 (D.C.1978) (citing, *inter alia, Frye v. United States,* 54 App.D.C. 46, 47, 293 F. 1013, 1014 (1923)). *Cf. Smith v. State,* 31 Md.App. 106, 355 A.2d 527, 536 (1976) ("The difference, if any, between the psychological stress evaluation test and a lie detector test is too minor and shadowy to justify a departure from our prior decision" excluding lie detector test results).

will and compelled his confession.[5] We agree with the trial court that the government sustained its burden of proving by a preponderance of the evidence, *Lego v. Twomey,* 404 U.S. 477, 489, 92 S.Ct. 619, 626–27, 30 L.Ed.2d 618 (1972), that the confession was voluntary.

*Affirmed.*

---

**5.** Although, as appellant asserts, Captain Hennessey early on expressed to him his belief that appellant had been involved in the shooting, there is no indication that Hennessey was not speaking truthfully or had no grounds for that belief. Also, while appellant was in custody for "roughly seven hours," as the trial judge found, part of that time involved questioning about an unrelated crime, and during part of it appellant was not questioned at all (*e.g.,* while his girlfriend was being summoned to the police station).