J-S64032-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHRISTOPHER WILLIS SHENK | : | No. 1952 MDA 2016 |

Appeal from the PCRA Order November 1, 2016
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s):  CP-22-CR-0002192-2007

BEFORE:  GANTMAN, P.J., PANELLA, J., and SHOGAN, J.

MEMORANDUM BY SHOGAN, J.:                         **FILED JANUARY 18, 2018**

Appellant, the Commonwealth of Pennsylvania ("the Commonwealth"), appeals from the November 1, 2016 order granting Christopher Willis Shenk's ("Appellee") petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546.  After careful review, we affirm in part and reverse in part.

The relevant facts and procedural history of this matter were set forth by the PCRA court as follows:

> [Appellee] met Leslie Kerstetter (hereinafter "Victim") as a mental health case manager at the Case Management Unit. *Notes of Testimony of PCRA Evidentiary Hearing*, 7/14/16, at 29. [Appellee] was assigned to assist Victim, and eventually the two became romantically involved. *Id.* On March 26, 2007, Victim communicated to Ashley Kerstetter (hereinafter "Ashley"), Victim's daughter, that [Appellee] was beating her. *Notes of Testimony of Jury Trial*, 10/14/08, Vol. 2, at 22. Ashley subsequently went to Victim's house where she found [Victim] unconscious on a bed with bruises on her face[;] [Appellee] was

passed out on the floor. *Id.* at 27-28. The house was in complete disarray and Ashely summoned the police. *Id.* at 28, 41. Victim elected not to go to the hospital. *Id.* at 27-28. On March 28, 2007 the Pennsylvania State Police called Ashley to inform her that her mother had passed away. *Id.* at 45. On March 30, 2007, a criminal complaint was filed charging [Appellee] with one count of Criminal Homicide and one count of tampering with evidence.

* * *

On March 11, 2008 [Appellee], represented by William Tully, Esquire (hereinafter "Attorney Tully"), proceeded to a jury trial on charges of Criminal Homicide[1] and Tampering with Evidence.[2] After a mistrial was declared, [Appellee] proceeded to another jury trial on October 17, 2008, where he was found guilty of Criminal Homicide. Subsequently, on December 16, 2008 [Appellee] was sentenced to 17 to 35 years in a State Correctional Facility. Attorney Tully's Post-Sentence Motion for Modification of Sentence was denied on January 6, 2009.

On January 16, 2009, the Public Defender's Office filed a timely Notice of Appeal on behalf of [Appellee]. On November 2, 2009, the judgment of sentence was affirmed, and on September 7, 2010 [Appellee's] Petition for Allowance of Appeal was denied.[3] Thereafter, Attorney Anne Gingrich Cornick (hereinafter "Attorney Cornick") was appointed to represent [Appellee].

On December 29, 2010, [Appellee] filed a timely Petition for Post Conviction Collateral Relief. On July 21, 2011, Attorney Cornick filed a Supplemental Petition for Relief pursuant to the Post Conviction Relief Act claiming ineffective assistance of counsel of [Appellee's] trial counsel, Attorney Tully. The

---

[1] 18 Pa.C.S. § 2501(a).

[2] 18 Pa.C.S. § 4910(1).

[3] ***Commonwealth v. Shenk***, 988 A.2d 730, 134 MDA 2009 (Pa. Super. filed November 2, 2009) (unpublished memorandum), *appeal denied*, 4 A.3d 1053 (Pa. 2010).

Supplemental Petition raised the following two claims of ineffectiveness of counsel:

(1) whether Attorney Tully was ineffective for failing to make a timely objection on the record to the introduction of photographs which were inflammatory, prejudicial, and misleading and (2) whether Attorney Tully was ineffective for failing to file a suppression motion arguing for the exclusion of the statement given by [Appellee] to Trooper Lotikis during an alleged custodial interrogation.

*Supp. Petition for Relief Pursuant to the Post Conviction Relief Act*, 07/21/11, p. 4.

The Commonwealth filed its response on August 2, 2011 requesting an evidentiary hearing. On June 1, 2015, Attorney Cornick's appointment as [Appellee's] counsel was revoked and [Appellee's] current PCRA counsel, Attorney Jennifer E. Tobias (hereinafter "Attorney Tobias"), was appointed as counsel for [Appellee]. A few months later, Attorney Tobias filed a Petition Requesting an Evidentiary Hearing on September 25, 2015. Ultimately, following numerous continuances and changes of counsel for [Appellee], an evidentiary hearing was held on July 14, 2016 on [Appellee's] outstanding claims for relief under the [PCRA].

PCRA Court Opinion, 11/1/16, at 1-3.

In an order filed on November 1, 2016, the PCRA court concluded that Appellee's trial counsel was ineffective for failing to file a motion to suppress Appellee's statement to police, and it ordered a new trial. Order, 11/1/16, at ¶ 2.[4] On November 30, 2016, the Commonwealth filed this timely appeal.

_____

[4] We note that in his PCRA petition, Appellee also averred that trial counsel was ineffective for failing to object to photographs admitted at trial. The PCRA court concluded that Appellee failed to establish prejudice with respect to this claim and denied relief. PCRA Court Opinion, 11/1/16, at 7. Neither
*(Footnote Continued Next Page)*

- 3 -

J-S64032-17

Both the Commonwealth and the PCRA court have complied with Pa.R.A.P. 1925.[5]

On appeal, the Commonwealth raises the following issues for this Court's determination:

A. WHETHER THE PCRA COURT ERRED IN FINDING TRIAL COUNSEL INEFFECTIVE FOR FAILURE TO FILE A SUPPRESSION MOTION?

1. Whether the PCRA Court erred in finding that trial counsel was ineffective for failing to file a suppression motion where the underpinnings of the suppression were meritless?

2. Whether the PCRA Court erred in finding that trial counsel was ineffective for [f]ailing to file a suppression motion where trial counsel had an articulable and reasonable trial strategy that was the basis for his action?

The Commonwealth's Brief at 4.

Our standard of review of an order denying PCRA relief is whether the record supports the PCRA court's determination and whether the PCRA court's determination is free of legal error. *Commonwealth v. Phillips*, 31 A.3d 317, 319 (Pa. Super. 2011). The PCRA court's findings will not be

_(Footnote Continued)_ ─────────────────

the Commonwealth nor Appellee appealed that determination, and we summarily affirm it.

[5] In response to the Commonwealth's timely Pa.R.A.P. 1925(b) statement of errors complained of on appeal, which was filed on January 24, 2017, the PCRA court filed an order pursuant to Pa.R.A.P. 1925(a) stating that it was relying on its November 1, 2016 opinion. Order, 2/22/17.

- 4 -

disturbed unless there is no support for the findings in the certified record. *Id.*

When considering an allegation of ineffective assistance of counsel, counsel is presumed to have provided effective representation unless the PCRA petitioner pleads and proves that: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable basis for his conduct; and (3) petitioner was prejudiced by counsel's action or omission. ***Commonwealth v. Spotz***, 84 A.3d 294, 311 (Pa. 2014). "In order to meet the prejudice prong of the ineffectiveness standard, a defendant must show that there is a 'reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different.'" ***Commonwealth v. Reed***, 42 A.3d 314, 319 (Pa. Super. 2012). A claim of ineffective assistance of counsel will fail if the petitioner does not meet any one of the three prongs. ***Commonwealth v. Simpson***, 66 A.3d 253, 260 (Pa. 2013). The burden of proving ineffectiveness rests with the petitioner. ***Commonwealth v. Rega***, 933 A.2d 997, 1018 (Pa. 2007).

The Commonwealth argues that the PCRA court erred in finding that Appellee's trial counsel was ineffective. Specifically, the Commonwealth first asserts that the PCRA court erred when it concluded that Appellee's confession to police was involuntary and that trial counsel was ineffective for failing to file a suppression motion. On review, we note that:

> the failure to file a suppression motion under some circumstances may be evidence of ineffective assistance of

counsel. However, if the grounds underpinning that motion are without merit, counsel will not be deemed ineffective for failing to so move. The defendant must establish that there was no reasonable basis for not pursuing the suppression claim and that if the evidence had been suppressed, there is a reasonable probability the verdict would have been more favorable.

*Commonwealth v. Watley*, 153 A.3d 1034, 1044 (Pa. Super. 2016).

When a court is called upon to determine whether a confession is voluntary and, hence, admissible at trial, it examines the totality of the circumstances surrounding the confession to ascertain whether it is the product of an essentially free and unconstrained choice by its maker. In making this inquiry, a court is not concerned with the issue of whether the substance of the confession is true. Rather, a court is constrained to examine only whether an individual's confession was the product of coercion, duress, or the use of other measures by interrogators deliberately calculated to overcome his or her free will.

*Commonwealth v. Wright*, 14 A.3d 798, 815 (Pa. 2011) (internal citations and quotation marks omitted).

The standard for determining whether police have initiated a custodial interrogation or an arrest is an objective one, with due consideration given to the reasonable impression conveyed to the person interrogated rather than the strictly subjective view of the troopers or the person being seized. An arrest exists when the police intended to take the defendant into custody and the defendant was subjected to the actual control and will of the police. A person is in custody when he is physically denied his freedom of action in any significant way or is placed in a situation in which he reasonably believes that his freedom of action or movement is restricted by the interrogation.

*Commonwealth v. Yandamuri*, 159 A.3d 503, 517-518 (Pa. 2017) (internal citations and quotation marks omitted).

The United States Supreme Court has held that, before law enforcement officers question an individual who has been in taken into custody or has been deprived of his freedom in any

significant way, the officers must first warn the individual that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed. However, these special procedural safeguards are required only where a suspect is both taken into custody and subjected to interrogation. In determining whether a suspect is in custody, two discrete inquiries are essential: (1) an examination of the circumstances surrounding the interrogation; and (2) a determination of whether, given those circumstances, would a reasonable person have felt that he or she was at liberty to terminate the interrogation and leave. As noted, a person is in custody for *Miranda*[6] purposes only when he is physically denied his freedom of action in any significant way or is placed in a situation in which he reasonably believes that his freedom of action or movement is restricted by the interrogation. Statements not made in response to custodial interrogation are classified as gratuitous and not subject to suppression for lack of *Miranda* warnings. Whether an encounter is deemed custodial must be determined by examining the totality of the circumstances.

*Id.* at 519-520 (internal citations and quotation marks omitted).

Factors to be considered in assessing the totality of the circumstances include the duration and means of the interrogation; the physical and psychological state of the accused; the conditions attendant to the detention; the attitude of the interrogator; and any and all other factors that could drain a person's ability to withstand suggestion and coercion.

*Commonwealth v. Templin*, 795 A.2d 959, 966 (Pa. 2002) (internal citations and quotation marks omitted).

Here, the PCRA concluded as follows:

a review of the record shows [Appellee] was questioned by police officers on three separate occasions, two at [Appellee's] home and one at the State Police barracks. The third round of

---

[6] *Miranda v. Arizona*, 384 U.S. 436 (1966).

questioning is the most concerning. The circumstances surrounding [Appellee's] questioning should have alerted Attorney Tully that [Appellee's] statements to police officers during this third round of questioning were potentially obtained illegally. Therefore, this should have provoked Attorney Tully to file a suppression motion, especially since these statements amounted to confessions of elements of the crime for which [Appellee] was charged, which Attorney Tully acknowledged.[2]

> [2] Notes of Testimony of PCRA Evidentiary Hearing, 7/14/16, p. 13 ("He admitted to elements of the killing, yes").

With regard to the third round of questioning that [Appellee] was subjected to, there were many surrounding circumstances that are troubling. Primarily, [Appellee], who admittedly went voluntarily, was driven in the back of a police car to State Police barracks the evening after Victim's death. Notes of Testimony of PCRA Evidentiary Hearing, 7/14/16, p. 40. Being driven to State Police barracks by police officers for questioning the night after [Appellee's] paramour [died] would surely call into question [Appellee's] physical and psychological state. Upon arriving at the State Police barracks, [Appellee] was placed in an interrogation room with the door left open. Initially, only two troopers began questioning [Appellee]; however, a third trooper eventually joined [Appellee] and the two other troopers in the small interrogation room. *Id.* at 31. [Appellee] stated that he was driven to police barracks "late afternoon, early evening" and did not arrive home until "it was dark." *Id.* at 33-34. Overall, [Appellee] stated that he was questioned for "a number of hours" with a cup of coffee offered to him by the troopers. *Id.* at 31-32. Even though [Appellee] was given two "cigarette breaks", he was always accompanied by "one of the troopers." *Id.* at 32. According to [Appellee],

> during the second time that I went out to smoke, apparently the fellow who was there went back inside and I was left outside by myself for a while. And there was some-some, I guess, problem with that, that he was supposed to stay out the whole time.

*Id.* at 32-33.

The fact that [Appellee] never asked for an attorney or was read his *Miranda* rights does not necessarily mean that this was not a custodial interrogation. As explained in *Commonwealth v. Nester*, 709 A.2d 879, 881 (Pa. 1998), "a noncustodial interrogation might possibly in some situations, by virtue of some special circumstances, result in an involuntary confession." The fact that [Appellee] was placed in a small room with three troopers along with his complimentary cup of coffee, questioned for a number of hours, and accompanied by troopers during his cigarette breaks, certainly indicates that the duration of this interrogation was lengthy and the means of it were manipulative.

Lastly, [Appellee] testified that he had been drinking scotch "steadily since Wednesday", which was the day before his interrogation. Notes of Testimony of PCRA Evidentiary Hearing, 7/14/16, p. 35. When Attorney Tobias asked [Appellee] how many drinks an hour or a day he had consumed, [Appellee] responded that he "had drank at least one fifth during that time and started a second one." *Id.* Admittedly, [Appellee] was a functioning alcoholic. *Id.* at 36. Notably, during the interrogation, [Appellee] was asked, "are you intoxicated that you can't function?", to which [Appellee] responded, "I could. While I wouldn't drive right now, I can sit here and talk with you. I can."

Given the totality of the circumstances surrounding [Appellee's] interrogation, Attorney Tully, admittedly, should have filed a motion to suppress [Appellee's] statements given during this interrogation because, taken as a whole, these circumstances indicate that the interrogation was so coercive that it deprived [Appellee] of his ability to make a free and unconstrained decision to confess.

Overall, although Attorney Tully's representation of [Appellee] is presumed to be effective, [Appellee] has proven by a preponderance of the evidence that Attorney Tully's decision or failure to file a motion to suppress did not offer a substantially greater potential for success than trying to counteract [Appellee's] confessions within that statement with expert testimony. Moreover, [Appellee] has proven by a preponderance of the evidence that but for Attorney Tully's failure to try to have [Appellee's] confession suppressed, [Appellee] would not have been convicted of Criminal Homicide because within that confession he "admitted to elements" of Criminal Homicide,

which aided the Commonwealth in meeting its burden of proof at trial. Therefore, [Appellee's] claim [of] ineffectiveness of counsel has merit.

PCRA Court Opinion, 11/1/16, at 10-13.

After review, we are constrained to conclude that the PCRA court erred. As the Commonwealth points out, the facts of this case are akin to those presented in **Yandamuri**. The Commonwealth's Brief at 15. In **Yandamuri**, the defendant was questioned by police in connection with the disappearance of a baby girl and her grandmother. The defendant accompanied detectives to the Upper Merion Police Station in an unmarked police car. The defendant was questioned in a room with the door closed, but not locked. The detectives told the defendant that they were investigating a kidnapping, that he was free to leave, and he was not under arrest. The detectives also offered the defendant food and water, and they informed him that he could use the restroom unaccompanied. The detectives asked the defendant if they could search his cell phone; the defendant agreed and executed a consent form.

The defendant provided his first written statement between 3:27 p.m. and 6:03 p.m., and he denied knowledge of the crime. The defendant was given an opportunity to review his statement and make corrections. Approximately thirty minutes later, the defendant made a second written statement and agreed to provide a DNA sample. Between 7:37 p.m. and 8:07 p.m., the defendant gave a third non-incriminating written statement.

The detectives reminded the defendant that he was free to leave and was not under arrest, and the defendant never stated that he wanted the questioning to stop or that he requested an attorney. Between 8:50 p.m. and 10:47 p.m., the defendant gave a fourth and a fifth written statement to police. At this point, the detectives saw inconsistencies in the defendant's story. The detectives read the defendant his ***Miranda*** warnings at 11:03 p.m., and he waived his rights.

The defendant then wrote a sixth statement between 2:04 a.m. and 2:17 a.m. Detectives asked for consent to search the defendant's computer, which he granted. The detectives confronted the defendant with the inconsistencies among his statements and those given by his wife. At this point, one of the detectives placed his hand on a bible and swore on his parents' grave that the defendant's wife was telling the truth. The detective then showed the defendant a picture of the missing baby, and the defendant became emotional. At 3:45 a.m., the defendant asked one of the detectives to call his wife to inform her that he was okay. The detective complied, and he then told the defendant that it was time to tell the truth.

The defendant completed his final written statement at 6:34 a.m. In this statement, he confessed to killing the infant and her grandmother. At the conclusion of this written statement, the defendant made both a video and audio-recorded confession that concluded at approximately 7:31 a.m.

After the video statement, the defendant was taken to a holding cell at the police station where he told a detective for the first time that two white men forced him to participate in the kidnapping. The defendant was charged with two counts of first-degree murder, two counts of second-degree murder, kidnapping, burglary, robbery, theft by unlawful taking or disposition, and abuse of a corpse. Three days after his arraignment, the defendant contacted the police to tell them that the two white men were the actual killers. The defendant then filed a motion to suppress his statements to police and his consents to search. The trial court held suppression hearings and denied the defendant's motion to suppress. The trial court concluded that the testimony the detective gave at the suppression hearings was completely credible, the detective's questioning methods were not improper, he provided *Miranda* warnings, the defendant waived his right to remain silent, and he did not ask for an attorney. The trial court further concluded that throughout questioning, the defendant did not appear to be overcome by exhaustion, emotion, or any kind of adverse physical effects. Furthermore, the trial court determined that the detectives did not threaten, make promises, or use force to obtain a confession; rather, they treated the defendant with courtesy and respect. The trial court concluded that the defendant was not placed in custody until after he completed his confessions. At that point, *Miranda* warnings had already been administered, and the defendant had properly waived them.

Following a jury trial, the defendant was found guilty of two counts of first-degree murder, kidnapping, burglary, robbery, and abuse of corpse, and was subsequently sentenced to death. On appeal, the defendant challenged, *inter alia*, the denial of his suppression motion. Our Supreme Court concluded that "[the defendant] never stated that he wanted to leave, never asked to stop the questioning, and never refused to answer questions. … Had [the defendant] made such requests and been refused, an examination of the totality of the circumstances may have supported a finding of custodial interrogation." *Yandamuri*, 159 A.3d at 520. Our Supreme Court continued:

> a reasonable person would have felt that he was at liberty to terminate the interrogation and leave. Accordingly, we hold that the record supports the trial court's factual findings regarding the circumstances surrounding Appellant's interrogation and that the trial court was correct in concluding that Appellant was not in custody during the challenged time period, thus, his statements to the detectives were gratuitous and not subject to suppression for lack of *Miranda* warnings.

*Id.* at 521.

With respect to Appellee's alcohol consumption in the case at bar, we note that in *Commonwealth v. Jones*, 322 A.2d 119, 125 (Pa. 1974), the defendant therein stated that he had been drinking heavily on the morning of his arrest prior to questioning. However, witnesses testified that while there was an odor of alcohol about the defendant, the defendant was not impaired so that he was unable to answer questions, and he was alert and responsive. *Id.* at 125. Officers handcuffed the defendant to a chair,

- 13 -

informed him of his **Miranda** rights, and the defendant continued to answer questions. **Id.** Moreover, the investigating officers administered a polygraph and engaged in subterfuge fabricating a story that conflicted with the defendant's version of events in order to obtain a confession. **Id.** at 125-126. On appeal, the Court in **Jones** held that these factors were not likely to cause an untrustworthy confession nor were they "so reprehensible as to invalidate the confession as offensive to basic notions of fairness." **Id.** at 126.

In the instant case, the duration of police questioning is not specified. Appellee testified that he was questioned for several hours, beginning in the late afternoon or early evening, and he did not arrive home until after dark. N.T., PCRA Hearing, 7/14/16, at 31-34. However, there is no indication or claim that that the questioning lasted sixteen, or even eight hours, as did the questioning in **Yandamuri** and **Jones**, respectively. Additionally, the circumstances here were not as coercive or deceptive as the circumstances present in **Yandamuri** and **Jones**. What is clear from the record, however, is that Appellee voluntarily went to the State Police barracks, and he was not under arrest, handcuffed, or locked in a room. **Id.** at 39-46. While Appellee testified that he could not recall if the troopers told him he could leave, **Id.**

at 32 and 34,[7] Appellee's trial counsel, Attorney Tully, testified repeatedly that Appellee was informed specifically that he was not in custody and was free to leave. *Id.* at 10, 20, 21. Appellee conceded that the investigating troopers were cordial and fair, he was provided coffee and cigarette breaks, he never requested counsel, he answered the troopers' questions, and he did not ask to leave. *Id.* at 31, 41-46. While police were aware that Appellee had consumed alcohol, Appellee informed them that while his use of alcohol would prevent him from driving, it would not prevent him from talking to the troopers and answering questions. *Id.* at 36. The record further reveals that Appellee chose not to leave, and instead he elected to answer questions, and ultimately incriminated himself.

---

[7] The notes of testimony reveal the following exchanges between Appellee's PCRA counsel and Appellee concerning whether he was told he was free to leave:

> Q. At any time during that questioning at PSP, did they tell you that you were free to leave?
>
> **A. I can't recall if they did or not.**

N.T., PCRA Hearing, 7/14/16, at 31-32.

> Q. And you answered this and I'm sorry: Did they 21 tell you you were free to go at any time when you were at PSP?
>
> **A. I can't recall if they did or not. They may have, I just don't remember.**

*Id.* at 34.

We conclude that the under the totality of the circumstances and based on the rationale in both **Yandamuri** and **Jones**, Appellee's statements were voluntary, and neither the methods of the questioning nor Appellee's alcohol use required suppression. Thus, based on this authority, we conclude that had counsel filed a suppression motion, the suppression court likely would have denied it. Therefore, we cannot agree with the PCRA court that, but for counsel's inaction, there is a reasonable probability that the result of the proceeding would have been different. **Reed**, 42 A.3d at 319. As such, the PCRA court erred in concluding that Appellee established the prejudice prong for proving ineffective assistance of counsel.[8] Accordingly, we are constrained to reverse that portion of the PCRA court's order granting Appellee relief and awarding him a new trial. We affirm the order in all other respects.

Order affirmed in part and reversed in part. Jurisdiction relinquished.

Judge Panella joins this Memorandum.

P.J. Gantman concurs in the result.

---

[8] Because we conclude that Appellee was unable to establish one of the prongs necessary to prove ineffective assistance of counsel, his claim fails. We need not address the Commonwealth's second issue concerning whether counsel had a reasonable basis for his actions. **Simpson**, 66 A.3d at 260.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 01/18/2018