J-S02042-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
ANTHONY RODRIGUEZ :
:
Appellant : No. 922 EDA 2021

Appeal from the Judgment of Sentence Entered January 4, 2021
In the Court of Common Pleas of Northampton County Criminal Division
at No(s): CP-48-CR-0001117-2019,
CP-48-CR-0003847-2019

BEFORE: OLSON, J., KING, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.: **FILED AUGUST 5, 2022**

Anthony Rodriguez (Appellant) appeals from the judgment of sentence[1]
entered in the Northampton Court of Common Pleas after his jury convictions
of three counts of possession of a controlled substance with intent to deliver
(PWID) and one count each of possession of drug paraphernalia and criminal
use of a communication facility.[2] On appeal, Appellant challenges the

_____

[1] Appellant purported to appeal from the trial court's March 16, 2021, order
denying his post-sentence motion. Appellant's Notice of Appeal, 4/15/21.
This appeal, however, properly lies from the judgment of sentence, entered
on January 4, 2021, made final by the denial of post-sentence motions. ***See
Commonwealth v. Shamberger***, 788 A.2d 408, 410 n.2 (Pa. Super. 2001)
(*en banc*) (citation omitted). The caption has been corrected accordingly.

[2] 35 P.S. § 780-113(a)(30), (32); 18 Pa.C.S. § 7512(a).

admission of his post-*Miranda*[3] confession, arguing he was coerced into making a statement to police, and the weight of the evidence.[4] For the reasons below, we affirm.

The underlying charges stem from a January 10, 2019, incident where Appellant sold narcotics in a controlled buy to a confidential informant (CI) for the Bethlehem Police Department. Police subsequently arrested Appellant, gave him *Miranda* warnings, and conducted an interview where Appellant admitted to the possession and sale of narcotics. Appellant was charged on two informations. On the first, docketed at CP-48-CR-0001117-2019, he was charged with two counts of PWID and one count possession of drug paraphernalia, and on the second, at CP-48-CR-0003847-2019, he was charged with one count each of PWID and criminal use of communication facility. The Commonwealth filed a motion to join the informations for trial. Commonwealth's Motion to Join Offenses Charged in Separate Informations for Trial, 2/24/20, at 1-3 (unpaginated).

_____

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[4] Appellant does not specify to which charges he is challenging the weight of the evidence.

Appellant filed a pre-trial motion seeking to suppress his statement to police, alleging it was involuntary. The trial court held a hearing on September 13, 2019, where the Commonwealth presented the following evidence.[5]

Bethlehem Police Detective Patrick Maczko testified that in December of 2018, he was involved in a narcotics investigation focused on Appellant. N.T. Pretrial Motions Proceedings, 9/13/19, at 5. Detective Maczko, along with Bethlehem Police Detective Michael Mish, organized a controlled purchase of heroin from Appellant using a CI. *Id.* at 7; N.T. Jury Trial Vol. I, 11/3/20, at 229-30. Detective Maczko gave the CI "pre-recorded buy money[.]" N.T., 9/13/19, at 9. Appellant was observed "entering or exiting" a home on East Sixth Street in Bethlehem, Pennsylvania. *Id.* at 19-20. We note this was the home of Appellant's ex-wife and adult daughter. N.T., 11/3/20, at 97-98. Appellant was then in a "white Oldsmobile," which the CI entered. N.T., 9/13/19, at 26. Detective Maczko did not take any photo or video surveillance of the controlled buy to protect the identity of the CI. *Id.* at 25. When the CI returned with heroin packaged in "glassine packets[,]" Detective Maczko applied for a search warrant for the East Sixth Street residence. *Id.* at 20, 27.

We note that after Appellant concluded the drug sale with the CI, Detective Mish observed what he believed to be a drug transaction between

---

[5] In addition to reviewing the suppression hearing transcripts, we have included contextual background from the trial transcripts, which are not dispositive to our review of Appellant's suppression challenge.

Appellant and the occupants of a red Volkswagen Jetta, Zavier Camacho, Mario Velazquez, and Pedro Vera. N.T., 11/3/20, at 149, 238-39. Police detained and searched the occupants of the red Volkswagen and found heroin with the "2 Hits" stamp on Camacho and Vera's person. *Id.* at 152-53.

Based on the observed drug transactions, Appellant was arrested that night before the execution of the search warrant. N.T, 9/13/19, at 38; N.T., 11/3/20, at 90-91. In the home, Officers found about 600 glassine packets of heroin with the stamp "2 Hits," 29 grams of loose fentanyl, an unspecified amount of marijuana, and extensive paraphernalia related to drug packaging and sales. N.T., 11/3/20, at 110-139. Some of the heroin packets were found in Appellant's daughter's bedroom. *Id.* at 123.

Bethlehem Police Detective Gregory Huff testified that he and Bethlehem Police Detective William Marks interviewed Appellant for a "[h]alf hour" at police headquarters after his arrest. N.T., 9/13/19, at 32, 45. Defective Huff first read Appellant his *Miranda* rights. *Id.* at 33. Detective Huff testified Appellant did not appear to be under the influence, understood the questions, did not express "hesitation or unwillingness" to speak with the detectives, and he never asked the detectives to stop questioning him or asked to leave the room. *Id.* at 37. Detective Huff stated he did not verbally or physically threaten Appellant while reading the *Miranda* rights. *Id.* at 34. Furthermore, neither the detective nor anyone else in the department told Appellant that "other people" who lived in the home would be charged in connection with the drugs found or discussed "let[ting] somebody else take

the fall" for him. *Id.* at 42-43, 48. Appellant then signed the department's standard *Miranda* waiver form and spoke to the detectives. *Id.* at 32, 39.

Detective Huff testified that Appellant admitted "that the drugs in the house were his, that he was a drug dealer, that he bagged the drugs, [and] that he sold a certain amount every week[.]" N.T., 9/13/19, at 41. Detective Huff did not record the interview with Appellant because he wanted to know "where [Appellant] got the heroin" and "people are more willing to open up . . . about their suppliers" when they are not being recorded. *Id.* at 44-45.

Appellant testified at the suppression hearing as follows: he was "spoken to . . . three times" before the detectives read him his *Miranda* warnings. N.T., 9/13/19, at 50. First, while in the cell block, Detective Mish asked Appellant what police would find in the East Sixth Street home, to which he replied he did not know and he did not live there. *Id.* at 51. Detective Mish came back a second time and informed Appellant that officers executed a search warrant on the home and "found something." *Id.* Appellant again insisted he did not live in the home and did not know what was there. *Id.* During this second conversation, Appellant stated Detective Mish said to him, "[Y]ou're a piece of shit. You're going to let your daughter take the fall[ for the drugs found in the home]." *Id.* Appellant stated the third encounter was also in the cell block, when one of the occupants of the red Volkswagen told Appellant the police were "trying to say that [Appellant] sold [narcotics] to such-and-such." *Id.* at 52. Appellant testified that because the detectives "threatened to lock up [his] daughter," he admitted to one drug transaction,

- 5 -

but denied telling the detectives there would be drugs in the home. *Id.* at 52, 56-58.

After the hearing, the trial court denied Appellant's motion to suppress. This case proceeded to jury trial on November 3, 2020, where the Commonwealth presented the evidence above. Furthermore, the Commonwealth presented additional evidence, which the trial court has summarized as follows.

While Detective Maczko was searching the CI after the controlled buy, Detective Mish was surveilling the East Sixth Street residence. Trial Ct. Op., 3/16/21, at 3. Detective Mish observed Appellant arrive at the home and enter it "without using a key or by knocking on the door." *Id.* Appellant then exited the home and met with the occupants of the red Volkswagen, Comacho, Velazquez, and Vera. *Id.* "[Detective] Mish observed Comacho, the front-seat passenger, and [Appellant] briefly meet," before Appellant returned to the home. *Id.*

> Thereafter, the [red Volkswagen] was followed by the police based on the reasonable suspicion that a drug transaction had just occurred. Moments after, the vehicle was stopped by [Bethlehem Police Detectives Emily] Falko and [Kristopher] Kopp[.] While [Detective] Kopp was speaking with Vera, [the detective] watched him reach down into his pocket with his right hand and observed several small packets of suspected contraband fall out of his pocket as he tried to remove his hand. Vera complied with orders to drop the packets. Subsequently, Vera was searched and later taken into custody. After Vera's search, the police discovered [250] glassine packets of suspected heroin labeled "2 Hits[."] Comacho was also taken into custody, and similar items/contraband were revealed during his search.

Trial Ct. Op. at 3-4.

Meanwhile, Appellant left the East Sixth Street home and went to his residence on Sherwood Court in Allentown, Pennsylvania. N.T., 11/3/20, at 90. Detective Maczko observed Appellant leave the Sherwood Court address in the same white Oldsmobile and drive back to Bethlehem, where the detective "had a patrol vehicle stop him, detain him[,] and arrest him[.]" *Id.* at 91. Police then searched him and found, *inter alia*, $20 of pre-recorded buy money. *Id.* at 91; Trial Ct. Op. at 4.

Appellant did not testify or present any evidence. The jury convicted him of all charges. On January 4, 2021, the trial court sentenced him to an aggregate term of nine years and two months to 25 years' incarceration. Appellant filed post-sentence motions, which the trial court denied, following a hearing, on March 16, 2021. Appellant filed a timely notice of appeal and complied with the trial court's order to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b).

Appellant raises the following claims for our review:[6]

1. Did the trial court commit[ ] reversable error by failing to suppress [ ] Appellant's confession to drug sales because it was [preceded] by the threat of police to prosecute [ ] Appellant's innocent daughter in his stead [sic]?

---

[6] In his Rule 1925(b) statement, Appellant raised the same issues as in his brief. We note the trial court opinion further addressed an argument that its order "prevented [Appellant] from testifying[,]" which Appellant did not raise in his appellate brief. Trial Ct. Op. at 19.

2. Was the guilty verdict rendered by the jury against the weight of the evidence presented at trial?

Appellant's Brief at 7.[7]

Preliminarily, we address the Commonwealth's contention that Appellant's appeal should be quashed for failure to comply with ***Commonwealth v. Walker***, 185 A.3d 969 (Pa. 2018), which requires separate notices of appeal when a single order resolves issues arising on more than one trial court docket. ***See Walker***, 185 A.3d at 977; Commonwealth's Brief at 7-8. On June 30, 2021, this Court issued a rule to show cause why the appeal should not be quashed for failure to comply with ***Walker***. Appellant responded that both criminal informations arose from one criminal incident, and the Commonwealth could have brought charges in a single criminal complaint. Appellant's Response to Rule to Show Cause, 7/7/21, at 2 (unpaginated). He also stated the informations were joined at trial and "the issues raised as to the final orders disposing of both . . . cases are virtually indistinguishable." ***Id.*** We decline to quash pursuant to ***Commonwealth v. Young***, 265 A.3d 462, 477-78 (Pa. 2021) (overruling ***Walker*** in part, stating Pa.R.A.P. 341 still requires separate notices of appeal when a single order resolves issues under more than one docket, but holding Pa.R.A.P. 902 permits appellate court, "in its discretion, to allow correction of the error where appropriate" when notice of appeal is timely filed). For the above reasons, we decline to quash this appeal and proceed to Appellant's claims.

---

[7] Appellant's claims have been reordered for ease of review.

In his first claim, Appellant argues the trial court erred when it did not suppress his involuntary confession to police. Appellant's Brief at 14. Our standard of review is well settled:

> [An appellate court] is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court is] bound by [those] findings and may reverse only if the court's legal conclusions are erroneous. Where . . . the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to [ ] plenary review.

*Commonwealth v. Jones*, 121 A.3d 524, 526-27 (Pa. Super. 2015) (citation omitted). In reviewing a suppression ruling, our scope of review is limited to the factual findings and legal conclusions of the suppression court. *Interest of L.J.*, 79 A.3d 1073, 1080 (Pa. 2013).

Appellant alleges that before receiving *Miranda* warnings, Detective Mish "berated" him for "letting [his] daughter 'take the fall.'" Appellant's Brief at 15. Appellant asserts that this "threat . . . to charge [his] daughter was specifically designed to overwhelm" his ability to "make a free and independent choice." *Id.* at 16. He maintains he admitted to Detective Huff that "he sold 'a couple bundles[ of heroin]'" only because of the threat against his daughter. *Id.* We conclude no relief is due.

When reviewing the voluntariness of a confession, the trial court does not look to "whether the defendant would have confessed without interrogation, but whether the interrogation was so manipulative or coercive that it deprived the defendant of his ability to make a free and unconstrained decision to confess." *Commonwealth v. Yandamuri*, 159 A.3d 503, 525 (Pa. 2017). The Commonwealth must prove by a preponderance of the evidence that the totality of the circumstances supported the voluntariness of the admission. *Id.* (citation omitted). When examining the totality of the circumstances, a trial court should consider

> the duration and means of the interrogation; the defendant's physical and psychological state; the conditions attendant to the detention; the attitude exhibited by the police during the interrogation; and all other factors that could drain a person's ability to resist suggestion and coercion. Additional relevant factors include: the accused s age and level of education and experience; his extent of previous experience with the police; whether the accused was advised of his constitutional rights; whether he was injured, ill, drugged, or intoxicated when he confessed; whether he was deprived of food, sleep or medical attention, and whether he was abused or threatened with abuse.

*Id.* (citations omitted).

Regarding Appellant's claims that Detective Huff threatened to charge his daughter for the narcotics found in the home, the trial court concluded Appellant's testimony was not credible. Trial Ct. Op. at 18. Moreover, the trial court stated that in the event Appellant's testimony was credible, it would still consider his statements to police to be voluntary. *Id.* at 16-17. The trial court opined:

[T]he record indicates that [Appellant's] daughter also had a significant connection to the residence. Arguably, any adult who resided or was present in the residence and had knowledge of and the ability to possess and control the controlled substances, could be charged with constructive possession of the controlled substances. While we do not know if the police intended to charge [Appellant's] daughter, even if a police officer deceptively suggested to [Appellant] that the police may arrest his daughter if the controlled substances were not his, we find that such a suggestion is not an unreasonable, false, or unfair representation. Nor would such tactics constitute unfair duress likely to elicit an invalid confession.

\* \* \*

[Even so, if] a statement made by the police or another arrestee informing [Appellant] that his daughter who was present in the home where the contraband was found would be arrested for constructive possession of the controlled substances if [Appellant] denied responsibility for possession and control of the same, is not the type of information that would elicit an untrustworthy, involuntary statement by [Appellant].

*Id.* at 17-18, *citing* **Commonwealth v. Jones**, 322 A.2d 119 (Pa. 1974) (finding the defendant's confession was voluntary despite a detective's deceptive statement that a co-conspirator implicated him). **See also Commonwealth v. Williams**, 640 A.2d 1251, 1259 (Pa. 1994) (police's false statement to a defendant that they located a gun he sold, which was of the same caliber used in the crime, was not sufficient to render a confession involuntary absent other coercive circumstances).

In insisting that his interrogation was so manipulative or coercive that he was deprived of "his ability to make a free and unconstrained decision to confess," Appellant ignores that the trial court rejected this claim on credibility grounds. **See Yandamuri**, 159 A.3d at 525. At the suppression hearing,

- 11 -

Detective Huff testified that he read Appellant his ***Miranda*** rights before interviewing him for 30 minutes. N.T., 9/13/19, at 32, 45. Appellant was not under the influence, understood the questions detectives asked of him, and did not request that the interview end. ***Id.*** at 37. Further, Detective Huff stated that neither he nor any other member of the department threatened Appellant in any way. ***Id.*** at 34, 42-43. The trial court credited these statements when it found Appellant's statement was voluntary. Trial Ct. Op. at 16.

Based on the totality of the circumstances, we do not disturb the trial court's determination that Appellant understood his ***Miranda*** warnings and voluntarily gave his statement to the police. ***See*** Trial Ct. Op. at 16. Likewise, we agree with the trial court that any purported comments by the detectives regarding Appellant's daughter, did not induce him into making an involuntary confession. We conclude the trial court's ruling was supported by the record before us and as such we do not disturb its findings on appeal. ***See Jones***, 121 A.3d at 526-27.

In his second claim, Appellant argues the jury's verdict was against the weight of the evidence.[8] Appellant's Brief at 12. This Court's standard of review of a weight of the evidence claim is limited:

_____

[8] Appellant properly preserved his weight claim in his post-sentence motion pursuant to Pa.R.Crim.P. 607(A)(1)-(3) (a challenge to the weight of the evidence must be raised before the trial court either before sentencing or in a post-sentence motion); ***see also*** Appellant's Post-Sentence Motions, 1/13/21, at 1-2 (unpaginated).

> A weight of the evidence claim concedes that the evidence is sufficient to sustain the verdict, but seeks a new trial on the ground that the evidence was so one-sided or so weighted in favor of acquittal that a guilty verdict shocks one's sense of justice. On review, an appellate court does not substitute its judgment for the finder of fact and consider the underlying question of whether the verdict is against the weight of the evidence, but, rather, determines only whether the trial court abused its discretion in making its determination.

*Commonwealth v. Lyons*, 79 A.3d 1053, 1067 (Pa. 2013) (citations omitted). The fact finder is free to believe all, some, or none or the evidence presented. *Commonwealth v. Jacoby*, 170 A.3d 1065, 1078 (Pa. 2017) (citations omitted).

> This Court will not find an abuse of discretion

> based on a mere error of judgment, but rather . . . where the [trial] court has reached a conclusion which overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will. Importantly, [this C]ourt should not find that a trial court abused its discretion merely because [we] disagree[ ] with the trial court's conclusion. Indeed, "when reviewing the trial court's exercise of discretion, it is improper for [this C]ourt to 'step[ ] into the shoes' of the trial judge and review the evidence de novo." In other words, [this C]ourt "may not disturb a trial court's discretionary ruling by substituting its own judgment for that of the trial court."

*Commonwealth v. Gill*, 206 A.3d 459, 467 (Pa. 2019) (citations and some quotation marks omitted).

Appellant avers that because he "did not reside" at the East Sixth Street home where the evidence was recovered, "his . . . confession was the most crucial piece of evidence presented by the Commonwealth." Appellant's Brief at 12-13. Appellant maintains his confession was "entirely unworthy of belief"

because Detective Huff did not make an audio or video recording of the statement, did not take notes during the interview, and relied "entirely on his memory" when recounting the interview at the trial two years later. *Id.* at 13. Further, Appellant alleges the confession was "at odds" with the Commonwealth's evidence at trial:

> [A]lthough . . . Appellant . . . told police he possessed fentanyl and used it to "cut" heroin, when police tested the bags of heroin . . . Appellant allegedly sold to the [CI] and others, the presence of fentanyl was not detected. Moreover, . . . Appellant purportedly told police the fentanyl would be found on the third floor, when in fact it was discovered on the second floor of the residence.

*Id.* Lastly, Appellant raises issue with the "failure of police to document" the observed drug sales:

> Despite claiming to have a full view of [Appellant] as he stood outside of [the] East Sixth Street [residence] before, during and after each drug sale, police did not take even a single photograph of . . . Appellant. While it could be argued that police were justified in not doing so when . . . Appellant was in the presence of the [CI], there is no reason why police could not have captured images of . . . Appellant at any other time.

*Id.* at 14 (record citations omitted). We conclude no relief is due.

We agree with the trial court that the weight of the evidence supported the jury's verdict. *See* Trial Ct. Op. at 13. Appellant admitted that the drugs in the East Sixth Street residence were his, the packets of heroin in the home were labeled with the same stamps as those he sold to the occupants of the red Volkswagen, and he possessed "narcotics packaging and trafficking material[.]" N.T., 11/3/20, at 60, 62-63. Further, Appellant described to detectives the amount of heroin he sold and the profits he made during a

weekly period. *Id.* at 64, 66. The Commonwealth also presented the following evidence: (1) the CI purchased heroin with the stamp "2 Hits" from Appellant during a controlled buy; (2) Appellant possessed $20 of pre-recorded buy money at the time of his arrest; (3) Vera and Comacho, the occupants of the red Volkswagen, similarly possessed packets of heroin with the stamp "2 Hits" after engaging with Appellant; and (4) police recovered 600 glassine packets of heroin stamped with "2 Hits," as well as paraphernalia, from the East Sixth Street home, where police observed Appellant entering and exiting before and after the transactions. N.T., 11/3/20, at 92, 110-39.

Appellant insists that audio or video recording of his confession to police was necessary to corroborate the detectives' testimony, but he offers no case law to support this contention. *See* Appellant's Brief at 12-14. Contrary to Appellant's argument, the lack of video and audio recording of his interview does not "cast[ ]incredulity" on the remaining evidence the Commonwealth presented. *See id.* at 14. The jury heard the Commonwealth's evidence and chose to credit it, despite any purported inconsistencies on which Appellant focuses, which it was entitled to do. *See Jacoby*, 170 A.3d at 1078. Appellant failed to demonstrate how in upholding this verdict, the trial court abused its discretion, and as such, no relief is due. *See Gill*, 206 A.3d at 467; *Lyons*, 79 A.3d at 1067.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/5/2022