J-S33010-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :   IN THE SUPERIOR COURT OF
                                                      :                  PENNSYLVANIA
                                                      :
                    v.                            :
                                                      :
                                                      :
JOHN E. HOFFMAN                    :
                                                      :
                    Appellant            :   No. 1188 WDA 2022

Appeal from the Judgment of Sentence Entered October 26, 2021
In the Court of Common Pleas of Cambria County Criminal Division at
No(s):  CP-11-CR-0000308-2020

BEFORE:   BENDER, P.J.E., McCAFFERY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BENDER, P.J.E.:            **FILED: December 29, 2023**

Appellant, John E. Hoffman, appeals from the aggregate judgment of

sentence of life imprisonment, without the possibility of parole, imposed after

a jury convicted him of first-degree murder, aggravated assault, and robbery.

After careful review, we affirm.

Following a jury trial in October of 2021, Appellant was convicted of the

above-stated offenses based on evidence that he beat a 74-year-old man,

Anthony Profaizer, to death with a club or pipe during a robbery at Profaizer's

home.  The court sentenced Appellant on October 26, 2021, to a term of life

imprisonment, without the possibility of parole, for his first-degree murder

conviction.   The court also imposed concurrent terms of 5 to 10 years'

_____

[*] Former Justice specially assigned to the Superior Court.

imprisonment, and 6 to 12 years' imprisonment, for his aggravated assault and robbery convictions, respectively.

Appellant filed timely, post-sentence motions, which the court denied. He then filed a timely notice of appeal, and complied with the trial court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Herein, Appellant states the following five issues for our review:

> I. Whether the trial court erred in failing to grant … Appellant's request for a continuance given the Commonwealth's disclosure of certain discoverable material only after the jury had been selected?
>
> II. Whether the trial court erred/abused its discretion by failing to suppress the statement given by Appellant as part of a polygraph test?
>
> III. Whether the trial court erred in denying … Appellant's motion for judgment of acquittal on the weight of the evidence?
>
> IV. Whether the trial court erred by failing to exclude improper character evidence and prior bad acts evidence offered by the Commonwealth against … Appellant in the form of videotaped statements, as the statements were highly prejudicial, had little probative value, and did not indicate … Appellant's involvement in the charged offenses?
>
> V. Whether the trial court erred in failing to determine that the offenses of aggravated assault and homicide merged for the purposes of sentencing?

Appellant's Brief at 5-6 (unnecessary capitalization omitted).

In Appellant's first issue, he contends that the trial court erred by denying his motion for a continuance when, "[o]n the very eve of the trial, after the jury had been selected[,] the Commonwealth presented … Appellant with additional discoverable materials." *Id.* at 10. Appellant does not identify

what, exactly, those 'discoverable materials' were, aside from confusingly mentioning, without explanation, that "it was only at that time that the Commonwealth disclosed that one of the persons … Appellant had supposedly confessed to had recanted his statement not by a letter but by an 'inmate request form,' which was not in the Commonwealth's possession." ***Id.*** at 13 (citation to the record omitted). According to Appellant, his "counsel was not afforded the opportunity for a meaningful review of the materials provided on such a late date…." ***Id.*** at 16.

Initially, we note:

> The decision to grant or deny a continuance request rests with the sound discretion of the trial court and we will not reverse the decision absent a clear abuse of discretion. ***Commonwealth v. McAleer***, … 748 A.2d 670, 673 ([Pa.] 2000). This Court will not find an abuse of discretion if the denial of the continuance request did not prejudice the appellant. ***Commonwealth v. Pettersen***, 49 A.3d 903, 914 (Pa. Super. 2012). In order to demonstrate prejudice, the appellant "must be able to show specifically in what manner he was unable to prepare his defense or how he would have prepared differently had he been given more time." ***Commonwealth v. Ross***, 57 A.3d 85, 91 (Pa. Super. 2012) (citation omitted).

***Commonwealth v. Broitman***, 217 A.3d 297, 299–300 (Pa. Super. 2019).

Here, Appellant's vague argument waives his first issue for our review. Appellant does not discuss what materials the Commonwealth provided 'on the eve of trial,' or even name which Commonwealth witness allegedly recanted. He also does not explain how his alleged inability to 'meaningfully review' the information turned over by the Commonwealth hindered the preparation of his defense. We will not develop these arguments for Appellant.

*See Commonwealth v. Hardy*, 918 A.2d 766, 771 (Pa. Super. 2007) ("When briefing the various issues that have been preserved, it is an appellant's duty to present arguments that are sufficiently developed for our review. This Court will not act as counsel and will not develop arguments on behalf of an appellant. Moreover, when defects in a brief impede our ability to conduct meaningful appellate review, we may dismiss the appeal entirely or find certain issues to be waived.") (citations omitted). Therefore, we conclude that Appellant has waived his challenge to the trial court's denial of his motion for a continuance.[1]

In Appellant's second issue, he claims that the trial court erred by failing to suppress statements he made during a polygraph test. Preliminarily, we recognize that "[q]uestions regarding the admissibility of evidence rest within the trial judge's discretion, and an appellate court will reverse the judge's decision only for an abuse of discretion." *Commonwealth v. Vandivner*, 962 A.2d 1170, 1179 (Pa. 2009) (citations omitted). Additionally,

> [t]he general rule in this Commonwealth is that any reference to a polygraph test that raises an inference concerning the guilt or innocence of a defendant is inadmissible at trial.

---

[1] In any event, even if not waived, we would conclude that no relief is due. The trial court provides a detailed explanation for its decision to deny Appellant's motion for a continuance in its Rule 1925(a) opinion. *See* Trial Court Opinion (TCO), 5/1/22, at 2-6. Given the court's discussion, and Appellant's wholly undeveloped argument on appeal, we would conclude that he has not demonstrated any abuse of discretion by the trial court. *See Ross*, 57 A.3d at 91 ("A bald allegation of insufficient amount of time to prepare will not provide a basis for reversal of the denial of a continuance motion.") (citation omitted).

- 4 -

> ***Commonwealth v. Hetzel****, 822 A.2d 747, 767 (Pa. Super. 2003)….* This rule derives from the inherent unreliability of polygraph examinations in the determination of innocence or guilt in fact. ***Id.***

***Commonwealth v. A.R.***, 990 A.2d 1, 6 (Pa. Super. 2010). However,

> there have been scenarios where our courts have admitted statements made before, during, or after a polygraph examination, without mention or reference to the actual **results** of the polygraph examination. ***See, e.g.***, ***Commonwealth v. Schneider***, 562 A.2d 868 (Pa. Super. 1989) … (holding [that the] court properly denied [a] motion to suppress [a] confession given to police after [a] polygraph examination; explaining [that a] statement given after being advised that one has failed [a] lie detector test may be admitted into evidence). ***See also Commonwealth v. Santiago***, 591 A.2d 1095, 1104 n.15 (Pa. Super. 1991) (*en banc*) … (noting [that the] trial court did not admit [the] appellant's second statement to police at trial "at least in part because the trial court labored under the **false** apprehension that such a statement was inadmissible merely because it was made during a polygraph examination") (emphasis in original).

***Commonwealth v. Javier Vasquez***, 237 A.3d 462, 2020 WL 2537214, at *4 (Pa. Super. 2020) (unpublished memorandum) (emphasis in original).[2]

In this case, Appellant acknowledges that the Commonwealth did not seek to admit the **results** of his polygraph examination but, instead, it "intended to use some of Appellant's **responses**" to questions posed during the test. Appellant's Brief at 18 (emphasis added). Nevertheless, Appellant contends that "[s]aid responses related to … Appellant's dealings with the

---

[2] ***See*** Pa.R.A.P. 126(b) (stating that unpublished, non-precedential decisions of the Superior Court filed after May 1, 2019, may be cited for their persuasive value).

- 5 -

alleged victim, illicit substances, and a situation in which Appellant was allegedly taken hostage, all of which prejudiced … Appellant." ***Id.*** He also insists that,

> [e]ven presenting the interview while excluding the examiner's determination of whether Appellant had 'passed' or 'failed' is still prejudicial to Appellant, as the jury could infer that the reason it was being presented to them was that … Appellant had failed the examination. Further, the type of questioning conducted during the polygraph examination could have allowed the jury to surmise that it was a polygraph examination, even though the answers were presented as a mere interview of … Appellant. … Appellant's answers cannot simply be divorced from the fact that they were given as a result of a polygraph examination.

***Id.*** at 18-19.

Again, Appellant's vague and undeveloped argument does not demonstrate an abuse of discretion by the trial court. Appellant does not fully explain what his at-issue polygraph responses were, or provide any examples of the 'type of questioning' that allowed the jury to not only infer that his responses were provided during a polygraph examination, but that Appellant had failed that test. Moreover, as the Commonwealth stresses, Appellant

> cites to no portion of the record that contains any reference to a polygraph examination, much less the results of the same. That is because no such reference or even any inference was made during trial. [Appellant] claims his "answers cannot be divorced from the fact that they were given as a result of a polygraph examination." No authority is cited for this proposition because [Appellant] pulls it out of thin air.

Commonwealth's Brief at 11 (citation omitted). We agree with the Commonwealth. The results of Appellant's polygraph examination were not admitted into evidence, and he has failed to demonstrate that the court

- 6 -

abused its discretion by admitting certain responses he gave during that interview.

In Appellant's next issue, he argues that the court erred by denying his motion for judgment of acquittal on the basis that the jury's verdict was contrary to the weight of the evidence.

> A claim alleging the verdict was against the weight of the evidence is addressed to the discretion of the trial court. Accordingly, an appellate court reviews the exercise of the trial court's discretion; it does not answer for itself whether the verdict was against the weight of the evidence. It is well settled that the jury is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses, and a new trial based on a weight of the evidence claim is only warranted where the jury's verdict is so contrary to the evidence that it shocks one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion.

***Commonwealth v. Houser***, 18 A.3d 1128, 1135-36 (Pa. 2011) (citations and internal quotation marks omitted).

Here, Appellant argues that the jury's verdict was contrary to the weight of the evidence because "the Commonwealth presented no direct evidence that [he] was involved in the [murder]. Rather, it relied upon conjecture and supposition together with … Appellant's purported confession to two inmates who were housed in the Cambria County Prison with … Appellant." Appellant's Brief at 21. Appellant stresses that "a third inmate, Robert Kratzer, to whom … Appellant allegedly confessed, recanted his statement to the Commonwealth." ***Id.*** at 22. He also challenges the DNA evidence that linked

him to the murder, contending that the DNA expert (whom Appellant fails to name) "conceded that her testimony on direct examination was in error." *Id.*

No relief is due. First, we note that Appellant misconstrues the record regarding the testimony of the Commonwealth's DNA expert, Rachel Ellerman. *See* N.T. Trial, 10/8/21, at 160. Ms. Ellerman testified that Appellant's DNA was found on the pockets of the victim's pants. *Id.* at 178-79; 183. On cross-examination, Ms. Ellerman acknowledged that there was "a clerical error or typographical error" in her report, but she indicated that the error was minor and it did not change her opinion that Appellant's DNA was on the victim's clothing. *See id.* at 188-91. Thus, Appellant's claim that Ms. Ellerman "conceded that her testimony on direct examination was in error" is misleading and not supported by the record. Appellant's Brief at 22.

In regard to the remainder of Appellant's weight challenge, we discern no abuse of discretion in the trial court's rejecting it. The court aptly summarized the evidence presented by the Commonwealth at trial, as follows:

> The Commonwealth proffered the testimony of Richard Hall and Jeffrey Norton, both of whom indicated that while incarcerated with [Appellant] at Cambria County Prison, [Appellant] confessed to harming 74-year old Anthony "Tony" Profaizer. More specifically, Mr. Hall testified that [Appellant] went into a "tyrade" about this case, stated that he went to Mr. Profaizer's to obtain drugs and money as he had frequently done over the years, beat him with a club/pipe because he had no drugs/money, and rolled him in a carpet. Mr. Norton stated that [Appellant] told him that Tony was "the gift that kept on giving," but when Tony would not give anymore because [Appellant] owed him money, he hit him in the head with a pipe and left him lying in the garage. Additionally, Mr. Norton testified that [Appellant] solicited him to traffic

narcotics with him, and he offered to be the "enforcer" because he had already killed one person.

Additionally, in an interview with County detectives, [Appellant] confirmed his long-term, lucrative relationship with Mr. Profaizer, a.k.a. "the gift that keeps on giving," and admitted to frequently selling Mr. Profaizer's prescription pills in exchange for pills and money. Chief County Detective Kristy Freoni and District Attorney Detective Scott Fye testified at the Preliminary Hearing that Mr. Profaizer was known by all, including the [Appellant], to always keep two prescriptions in his right front pocket, and his wallet in his back right pocket. However, upon investigating the scene, Chief Freoni indicated that these items could not be located, either within Mr. Profaizer's pockets, or at the residence in general, which resulted in the filing of robbery charges. Forensic DNA evidence identified the existence of both Mr. Profaizer's and [Appellant's] DNA on swabs taken from Mr. Profaizer's front and back pants pockets. In conducting a welfare check at Mr. Profaizer's residence, Geistown Borough Police Chief Nicholas Zuckicia observed Mr. Profaizer lying on the garage floor with his underwear partially down, and his upper torso partially covered by a carpet remnant. Deputy Coroner Charles Mahon pronounced Mr. Profaizer deceased, and after working with a forensic pathologist, concluded that Mr. Profaizer died on November 24 by homicide caused by blunt force trauma to the head.

TCO at 7-9 (citations to the record omitted).

From this evidence, the trial court rejected Appellant's argument that it "erred by failing to grant a judgment of acquittal, as the verdict was against the weight of the evidence, as there were no eyewitnesses, there was unreliable DNA evidence, and the Commonwealth's evidence pointed to the identity of another person or persons as the perpetrator of the offenses." *Id.* at 10 (citation omitted). The court stressed that,

defense counsel was afforded the full and fair opportunity to explore these notions with numerous Commonwealth witnesses at trial, who testified at length as to DNA evidence and various forms of circumstantial evidence. The record clearly reveals that defense counsel fully probed their testimony through rigorous

cross-examination. We presume that the jury, *inter alia*, considered the witness[es]' responses to counsel's questioning during its deliberations, and utilized this information in assessing witness credibility. In fact, we instructed the jury during both our opening and closing charge that credibility was within its purview, and have no reason to believe that the jury disregarded our directives or that its verdict was based upon "pure conjecture."

*Id.* at 11. Based on the record and the trial court's analysis, we conclude that Appellant has not established that the court abused its discretion in rejecting his challenge to the weight of the evidence.

Next, Appellant argues that the trial court erred by permitting the Commonwealth to introduce prior bad acts evidence. Pennsylvania Rule of Evidence 404(b) states, in pertinent part:

**(b) Other Crimes, Wrongs, or Acts.**

(1) *Prohibited Uses.* Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

(2) *Permitted Uses.* This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

Pa.R.E. 404(b)(1)-(2).

Appellant contends that,

[i]nstantly, the Commonwealth sought to admit portions of a videotaped interview of [Appellant] in which he related he was kidnapped because he owed drug dealers money, and they had threatened him with physical harm, as well as evidence that he intended to "rip off Joe from Westmont." **See** N.T., [10/11/21], at … 191-222; Commonwealth's Exhibit 40; Court's Exhibit 1 Video Segment Summary, segments 5, 6, 7, 8. Said portions of the video were admitted over defense objection and narrated by a police detective. **See**[] N.T., [10/12/21], at … 13-16, 19.

Any statement beyond that Appellant owed a debt is prejudicial, as it serves to associate him with violent criminals, which was an entirely separate episode from the instant case. Furthermore, the evidence of his supposed intention to "rip off Joe from Westmont" is so scant that there simply cannot be any comparison made to the instant facts. There is no indication of how or when this was to occur, who Joe was, what he was going to "rip off" from "Joe," or even if he took any steps to follow through. [**Commonwealth v.**] **Shively**[, 424 A.2d 1257 (Pa. 1981),] requires the occurrences be more similar than simply repeated commission of crimes of the same class to be admissible. []

The Commonwealth is impliedly asserting that Appellant simply had a plan to rob another man, apparently. Thus, the occurrences bear little similarity. There is little probative value to such statements devoid of any detail. Presenting them to the jury served only to portray Appellant as a criminal generally.

Finally, the Commonwealth offered no corroborative evidence — no other witnesses or investigation — confirming that the events in these statements occurred, undermining any indication they served as a motive for the instant offenses. Therefore, the videos should have been barred from evidence. Since they were not, the Appellant requests this Honorable Court remand the case for a new trial and bar the video segments/Appellant's statements from evidence.

Appellant's Brief at 26-28.

The trial court permitted the Commonwealth to introduce the at-issue video segments, agreeing with the Commonwealth that the evidence was relevant to proving Appellant's motive and intent. **See** Order, 10/12/21, at 1. For instance, as the Commonwealth explains on appeal, the at-issue video segments

suggest that [Appellant] owed money and had a lot of pressure on him. The Commonwealth relied on a theory that the victim in this case was robbed (explaining why [Appellant's] DNA was inside the victim's pockets). Evidence that [Appellant] claimed he really needed money because he was being threatened with harm, gives him reason to murder the victim in order to rob him. If this

- 11 -

Honorable Court finds that this specific evidence does qualify as a prior wrong, crime or bad act then it clearly is admissible to show [Appellant's] motive and intent to rob the victim. [Appellant] referred to the victim as the "gift that kept on giving" and this suggests he had a pattern of stealing from the victim. The evidence that [Appellant] had planned a similar robbery from an unidentified person further demonstrates that he needed money, and had motive to commit robbery and, eventually, murder. The trial court did not abuse its discretion in finding that the Commonwealth's evidence fell under a well-recognized exception to Pennsylvania Rule of Evidence 404.

Commonwealth's Brief at 13-14.

We discern no abuse of discretion in the court's admitting the at-issue evidence as demonstrative of Appellant's motive and/or intent in committing the robbery of the victim that ultimately led to his murder. Appellant does not offer any direct response to the court's determination that the evidence was admissible under the motive and/or intent exceptions of Rule 404(b)(2). As it is Appellant's burden on appeal to demonstrate a clear abuse of the court's discretion in admitting the evidence, no relief is due. **See Commonwealth v. Aikens**, 990 A.2d 1181, 1184 (Pa. Super. 2010) ("A trial court's decision [on an evidentiary ruling] will not be reversed absent a clear abuse of discretion.") (citation omitted).

Finally, in his fifth issue, Appellant claims that the trial court erred by not merging his sentences for his first-degree murder and aggravated-assault convictions. Appellant stresses that the criminal complaint charged, with respect to criminal homicide, that Appellant "did strike Anthony Profaizer in the head with blunt force causing trauma and death." Appellant's Brief at 30-31. Regarding aggravated assault, the criminal complaint charged that

Appellant "did strike Athony Profaizer with blunt force causing trauma and death." *Id.* at 31. Thus, Appellant contends that his murder and aggravated assault convictions were premised on the same criminal conduct, and his sentences must therefore merge.

This Court has explained that,

merger is a nonwaivable challenge to the legality of the sentence. The issue is a pure question of law, allowing for plenary review.

The merger statute states that:

No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.

42 Pa.C.S. § 9765. … Our Courts have long held that where a defendant commits multiple distinct criminal acts, concepts of merger do not apply.

When considering whether there is a single criminal act or multiple criminal acts, the question is not whether there was a break in the chain of criminal activity. This issue is whether the actor commits multiple criminal acts beyond that which is necessary to establish the bare elements of the additional crime, then the actor will be guilty of multiple crimes which do not merge for sentencing purposes.

*Pettersen*, 49 A.3d at 911–12 (some internal citations and quotation marks omitted).

Here, the trial court concluded that Appellant committed separate, criminal acts of aggravated assault and murder and, thus, merger was not warranted. It explained:

Following imposition of sentence, defense counsel raised the issue of merger relative to the … sentences [for aggravated assault and first-degree murder]; however, the Commonwealth noted two distinct acts, as the forensic evidence at trial confirmed that the assault occurred first, and then the homicide. Adopting the Commonwealth's argument, we allowed the sentence to stand.

In his Post-Sentence Motions, [Appellant] again raised the issue of merger, and we required the parties to file briefs. *See* Order of 12/28/21. Upon consideration of the parties' submissions, as well as the evidence of record, we denied [Appellant's] Motion. *See* Order of 3/9/22. In doing so, **we agreed with the Commonwealth's assertion as to [Appellant's] commission of two distinct crimes, separated in time. Particularly, we believe that this is supported by the expert forensic opinion of Dr. Kevin Whaley, who, based on the wounds and physical evidence, testified that the initial assault occurred within the victim's house, and that fatal blows occurred in the garage.** N.T.[,] 10/11/21, [at] 141-[]43. Accordingly, we again determined merger to be inappropriate, and believe that this ruling should stand.

TCO at 12 (emphasis added).

Notably, aside from quoting the similar language of the charges in the criminal complaint, Appellant makes no argument that the crimes arose from a single criminal act. More specifically, he does not challenge the court's conclusion that he committed aggravated assault of the victim inside the victim's home, and then committed the separate act of murder in the victim's garage. The fact that the charging documents indicate the aggravated assault and murder were accomplished by the same means, *i.e.*, Appellant's striking the victim in the head with blunt force, does not necessarily prove that those crimes were part of the same criminal act. Instead, the record supports the court's determination that the aggravated assault and murder occurred separately, in separate locations of the victim's house. "Appellant is not

- 14 -

entitled to a volume discount for these crimes simply because he managed to accomplish … the acts within a relatively short period of time." ***Pettersen***, 49 A.3d at 912. Thus, Appellant's convictions did not merge for sentencing purposes.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

12/29/2023